[No. D015875. Fourth Dist., Div. One. Mar. 24, 1992.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ROBERT A. JURADO, JR., Real Party in Interest.

1218

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Craig E. Fisher, Deputy District Attorneys, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Frederick R. Millar, Jr., Deputy Attorneys General, as Amici Curiae, upon the request of the Court of Appeal, on behalf of Petitioner.

No appearance for Respondent.

Glenn Stewart Warren and Elizabeth A. Missakian for Real Party in Interest.

Elaine A. Alexander and Martin Buchanan as Amici Curiae, upon the request of the Court of Appeal, on behalf of Real Party in Interest.

## OPINION

**HUFFMAN, J.**—This case requires us to determine whether the "lying-in-wait" special-circumstance allegation (Pen. Code, § 190.2, subd. (a)(15))[1] was properly charged under the facts and whether a defendant who is successful in having such allegation dismissed before jeopardy attaches may plead guilty to the remaining charges and allegations, and invoke principles of double jeopardy to prevent appellate review of such dismissal and the subsequent reinstatement of the dismissed allegation. We conclude neither the double jeopardy clause of the federal or state Constitutions bars appellate review or reinstatement of the dismissed allegation. We further find the trial court erred in dismissing the "lying-in-wait" special circumstance which was properly charged on the facts of this case. Accordingly, we will grant the People's mandamus petition, vacate the stay, and return the matter to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 1991, the body of Teresa Holloway was discovered in a culvert adjacent to highway 163 in San Diego's Balboa Park. She had visible trauma to her head and face consistent with being struck with a hard object. An autopsy revealed she died as a result of strangulation and blunt force to the head.

Real party in interest Robert A. Jurado, Jr., and two women, Denise Renee Shigemura and Anna Jeannette Humiston, were arrested and charged with the murder of Holloway. On July 29, 1991, a preliminary hearing was held on an amended complaint which charged all three with murder in violation of section 187 with the allegation that Jurado used a deadly weapon during the murder, to wit a cord and tire jack, within the meaning of section 12022, subdivision (b).[2] All three were bound over for trial as charged.

When the information was filed in the superior court, the prosecution added a special circumstance allegation that the three defendants murdered

---

[1]Section 190.2, subdivision (a)(15) reads as follows: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true: [¶] . . . [¶] The defendant intentionally killed the victim while lying in wait."

All statutory references are to the Penal Code unless otherwise specified.

[2]Much of the testimony in the preliminary examination transcript is hearsay. The preliminary examination was conducted pursuant to section 872, subdivision (b), added by Proposition 115. The use of hearsay at preliminary examinations was upheld in *Whitman v. Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262]. No procedural or evidentiary challenge to the evidence at the preliminary examination has been made by any of the parties to this writ proceeding. Accordingly, our review of the facts is based in large part on hearsay evidence.

Holloway intentionally while lying in wait within the meaning of section 190.2, subdivision (a)(15). The information was amended on October 11, 1991, to add a count charging all three defendants with conspiracy to commit murder, a violation of sections 182, subdivision (a)(1), and 187. Each defendant thereafter filed a motion pursuant to section 995 to quash the information. On November 29, 1991, the trial court denied the motions as to both counts in the information and their attendant allegations, but granted as to the alleged special circumstance.

Jurado immediately pled guilty to all the remaining counts and allegations in the information. The prosecutor, however, refused to sign the change of plea form, and informed Jurado and the court the district attorney was considering a writ petition in the appellate court to review the dismissal of the alleged special circumstance. Jurado did not waive time for sentencing, which was then scheduled for December 23, 1991. The remaining defendants were set for trial.

The district attorney filed a petition in this court on December 13, 1991, seeking a stay and a peremptory writ of mandate to reinstate the alleged special circumstance as to all three defendants. We denied the petition as to Shigemura and Humiston and stayed Jurado's sentencing pending review of the petition's merits as to Jurado.[3]

Approximately a week prior to the murder, both Jurado and his girlfriend, Shigemura, made efforts to obtain a gun. Jurado needed the gun in order to "take care of somebody," by which he meant to kill someone. Shigemura wanted the gun to "take care of a problem."

On the evening of the killing, the three defendants and Holloway were visiting at Mark Schmidt's home. The three defendants all expressed some unhappiness with Holloway because she stayed on the telephone at the Schmidt residence, making the group late to return Shigemura to the halfway house where she resided. In her interview with police, Shigemura said before the group left Schmidt's house, Jurado told her they (meaning Shigemura and Jurado) needed to get rid of Holloway. Shigemura agreed, but said they didn't have time to do it then. Before they left, Jurado repeated, "We have to take care of her."

As the group drove away in Humiston's car, Holloway was in the front passenger seat. Jurado was sitting directly behind her in the backseat of the

---

[3]The trial court has already determined there is sufficient evidence in the preliminary examination transcript to support a charge of murder and conspiracy to commit murder. The parties have not challenged that determination. Our focus on the evidence bearing on the special circumstance allegation is therefore somewhat limited.

car. Shortly after they drove away from Schmidt's house, Jurado took a cord which he had with him, placed it around Holloway's neck while she was seated in front of him, and began to strangle her. Apparently Jurado found it harder to kill the struggling victim by strangulation than he had planned. Humiston came to his aid, the victim was subdued and struck in the head with a tire jack.

Evidence of the attack was found by the police in the front passenger area of the car. The police found blood and hair in the area of the front passenger's seat, door and roof, indicating to the homicide detective the assault had occurred at that spot. At some point after the assault began, the car stopped. Holloway was thrown from the car and again struck in the head with the tire jack. Her body was left in a culvert adjacent to the road where it remained until May 17 when it was found by a motorist who had stopped near the location because of car trouble.

## Discussion

We begin our discussion by determining the appropriate standard of review. We then review the sufficiency of the evidence to support the alleged special circumstance pursuant to that standard. Finally, we will examine the double jeopardy issues raised by Jurado in his opposition to the petition.

### I

### *Standard of Review*

We note at the outset we are not reviewing the sufficiency of the evidence to justify a jury finding of the truth of the alleged special circumstance. Our only task is to determine whether there is sufficient evidence in the preliminary examination transcript to permit the district attorney to file such allegation and take the matter to trial. (See *People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

Although the special circumstance at issue was not in the criminal complaint before the magistrate, the district attorney in appropriate circumstances has the authority to add such allegation to the information filed in superior court. ■ Section 739 permits a prosecutor to file in superior court "an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." Such additional charge or allegation may be brought where there is sufficient evidence in the transcript of the preliminary examination to justify an added offense which occurred during the same transaction involved in the commitment order. (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241].)

■ In determining if charges in an information can withstand a motion under section 995, neither the superior court nor the appellate court may reweigh the evidence or determine the credibility of the witnesses. (*People v. Block* (1971) 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961]; *People v. Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].) Ordinarily, if there is some evidence in support of the information, the reviewing court will not inquire into its sufficiency. (*People v. Block, supra*, 6 Cal.3d 239; *Rideout v. Superior Court* (1967) 67 Cal.2d 471, 4741 [62 Cal.Rptr. 581, 432 P.2d 197].) Thus, an indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged. (*Somers v. Superior Court* (1973) 32 Cal.App.3d 961, 963 [108 Cal.Rptr. 630]; *People v. Massengale* (1968) 261 Cal.App.2d 758, 763 [68 Cal.Rptr. 415].)

■ "[A]lthough there must be *some* showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate." (*Williams v. Superior Court* (1969) 71 Cal.2d 1144, 1148 [80 Cal.Rptr. 747, 458 P.2d 987], original italics.) "Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information." (*Rideout v. Superior Court, supra*, 67 Cal.2d 471, 474; *Caughlin v. Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 481 P.2d 211].) Thus, the ultimate test is that " ' "[a]n *information will not be set aside or prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.*" ' " (*People v. Slaughter* (1984) 35 Cal.3d 629, 637 [200 Cal.Rptr. 448, 677 P.2d 854], original italics.)

We review the evidence in support of the information to determine whether as a matter of law it is sufficient, not whether the trial court's ruling was reasonable. (*People v. Laiwa, supra*, 34 Cal.3d 711, 718; *People v. Superior Court (Grilli)* (1978) 84 Cal.App.3d 506, 511 [148 Cal.Rptr. 740].)

II

*Sufficiency of the Evidence*

■ The district attorney contends the evidence before the magistrate was sufficient to support the lying-in-wait special-circumstance allegation under section 190.2, subdivision (a)(15) added to the information. In order to determine the validity of such contention, we look first to the elements of lying in wait as defined in that special circumstance.

The district attorney relies on *People v. Morales* (1989) 48 Cal.3d 527, 553-557 [257 Cal.Rptr. 64, 770 P.2d 244], to support his assertion the

lying-in-wait special circumstance was properly charged. In *Morales* the defendant was charged with the same special circumstance as Jurado is charged with here. There, the defendant and others had "lured" the victim into a car, strangled her with a belt until it broke, then beat her over the head with a hammer, removed her from the car, committed an act of sexual intercourse upon her, and then stabbed her to ensure she was dead. In upholding a true finding by the jury on the special circumstance, the court identified the components of lying in wait as defined in section 190.2, subdivision (a)(15). It concluded there were three principal features of a murder committed by lying in wait. That form of intentional murder includes "(1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage." (*People* v. *Morales, supra,* 48 Cal.3d at p. 557.)

The court found the evidence supporting the special circumstance to be sufficient ". . . based on defendant's watchful waiting, from a position of advantage in the backseat, while the car was being driven to a more isolated area, and his sudden surprise attack from behind and without warning . . . ." (*People* v. *Morales, supra,* 48 Cal.3d at p. 555.)

The *Morales* case instructs us that the principal component of this particular special circumstance is the waiting of a defendant for the opportunity to take the victim by surprise by concealing his murderous purpose in order to gain the advantage of ambush or surprise. As we apply the principles of *Morales* to the case before us, we reiterate we are not reviewing the sufficiency of evidence to support a jury verdict. Rather, we are only deciding if there is some evidence to support the alleged special circumstance allegation. Put differently, does the evidence before the magistrate support an inference Jurado concealed his purpose, watched and waited, and took Holloway by surprise? (*People* v. *Slaughter, supra,* 35 Cal.3d at p. 637.) We believe the record clearly supports such an inference.

The testimony before the magistrate shows Jurado and Shigemura attempted to obtain a gun at least one week before the killing. They needed a gun in order to "take care of somebody" or to take care of a "problem." The testimony also revealed before Jurado and his companions left Schmidt's house, Jurado told Shigemura they would have to "get rid of" Holloway. When Shigemura agreed but raised the issue of timing, Jurado repeated they would have to get rid of Holloway. The clear inference from this testimony is that Holloway was the problem to be "taken care of" and "gotten rid of." Such evidence bears on Jurado's state of mind before he and his cohorts entered the automobile on the evening of the murder.

When he got into the car, Jurado positioned himself in the backseat immediately behind Holloway. His later use of a cord and tire jack to kill her supports an inference he brought or arranged the murder implements in advance of his opportunity to use them. Moreover, after Jurado and his friends had driven away from the Schmidt residence (an amount of time unclear from the record), Jurado ambushed Holloway by a surprise attack from behind. Clearly, the evidence supports an inference he used his opportunity to position himself behind Holloway and wait to take her "unawares" and obtain the advantage of surprise.

■ Jurado argues the *Morales* (*supra,* 48 Cal.3d 527) case is inapposite to these facts because the men in *Morales* "lured" the victim into the car. He further contends the Supreme Court retrenched from *Morales* in its later opinion in *People* v. *Webster* (1991) 54 Cal.3d 411, 448 [285 Cal.Rptr. 31, 814 P.2d 1273]. He is wrong on both assertions.

It is true both Morales and Webster were said by the court to have "lured" the victims into a position where the defendants could take advantage. It is also clear the fact a victim was "lured" is but one factor in a lying-in-wait analysis. The court's discussion in both cases focuses principally on the respective defendants' concealment of purpose which put each in a position of advantage to take his victim by surprise. (*People* v. *Webster, supra,* 54 Cal.3d at p. 448.) *Webster* specifically relies on the *Morales* decision, which it holds does not represent a change in the previous law. (See also *People* v. *Ruiz* (1988) 44 Cal.3d 589, 615 [244 Cal.Rptr. 200, 749 P.2d 854].)

Even if *Webster* raised any question regarding the vitality of the *Morales* holding on the lying-in-wait special circumstance, the court's most recent opinion discussing lying in wait puts the issue to rest. In *People* v. *Edwards* (1991) 54 Cal.3d 787, 821-825 [1 Cal.Rptr.2d 696, 819 P.2d 436], the court revisited section 190.2, subdivision (a)(15). In *Edwards,* the defendant, who was an excellent marksman, shot two young girls who were walking in a campground. The defendant, who was familiar with the campground, had driven around it several times on the day he shot his victims as they were walking down a road in the campground. The defendant pulled alongside of the victims, said, "Girls," then fired two shots which killed one girl and wounded the other. The defendant in *Edwards* was charged with the special circumstance of lying in wait.

The Supreme Court upheld the jury's true finding on the special circumstance allegation. It reaffirmed its earlier holding in *Morales* which it found indistinguishable from *Edwards.* The court found Edwards had engaged in waiting and watching for an opportune time to act, and clarified the watching did not have to continue for any particular period of time provided its

duration was sufficient to establish waiting, watching, and concealment or other secret design to take the victim unawares and by surprise. (*People* v. *Edwards, supra*, 54 Cal.3d at p. 821.)

The court in *Edwards* found the defendant waited and watched for an opportunity to commit the murder and had concealed his purpose so as to take the victims by surprise which was sufficient to prove the special circumstance. Clearly, the murdered victim in *Edwards* was not "lured" to the location of her death.

We are satisfied lying in wait can be shown where the victim is not "lured" into the location and where the victim is actually aware of the defendant's presence if the defendant's conduct indicates a period of watching or waiting and concealment of purpose so as to put the defendant in a position to take the victim " 'unawares and by surprise.' " (*People* v. *Edwards, supra*, 54 Cal.3d at p. 823.)

There is sufficient evidence in this record to raise an inference of lying in wait. That is all that is required to permit the pleading to survive a challenge under section 995. We therefore find the trial court erred in dismissing the alleged special circumstance under section 190.2, subdivision (a)(15).

### III

### Double Jeopardy

Immediately following the trial court's decision to dismiss the lying-in-wait special circumstance, Jurado indicated his desire to plead guilty to all of the remaining charges and allegations. He submitted to the trial court a change of plea form which the district attorney declined to sign. Following Jurado's guilty plea to the remaining charges and allegations in the information, his case was set for sentencing, which was stayed by this court pending review of the People's writ application.

Jurado claims his guilty plea placed him in jeopardy since it stands as a conviction and principles of double jeopardy bar reinstatement of the special circumstance allegation dismissed in the prejeopardy hearing pursuant to section 995.[4]

Jurado's response to the People's petition presents the question of whether the prejeopardy dismissal of the special circumstance allegation pursuant to

[4]Because of the importance of the double jeopardy question raised by Jurado, we requested and received amicus curiae briefs from the Appellate Defenders, Inc., and the Attorney General. Both briefs have been of great assistance to the court in resolving the double jeopardy issue.

Jurado's motion under section 995 and his immediate guilty plea without the concurrence of the prosecutor and before the prosecutor could seek pretrial review of that dismissal would result in a "second prosecution" for the same offense after "acquittal" or "conviction." We believe the record demonstrates Jurado was never in jeopardy within the meaning of the double jeopardy clause for the alleged special circumstance and his immediate guilty plea as a tactic to cut off review and reinstatement of the dismissed allegation does not raise the bar of double jeopardy to further prosecution.

█ The Fifth Amendment of the United States Constitution provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . ." Article I, section 15, of the California Constitution similarly provides: "Persons may not be twice put in jeopardy for the same offense."

The double jeopardy clause is designed to protect an individual from being subjected to trial and possible conviction more than once for the "same offense." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 10-11, 98 S.Ct. 2141].) As appropriate to the issues in this case, the double jeopardy clause protects an individual against a second prosecution for the same offense after an acquittal or a conviction and it protects against multiple punishments for the same offense. (*Grady* v. *Corbin* (1990) 495 U.S. 508, 516 [109 L.Ed.2d 548, 561, 110 S.Ct. 2084].) The issue before us does not implicate multiple punishments for the same offense. Rather, the question is whether Jurado has been convicted or acquitted of the "same offense" within the meaning of the double jeopardy clause.

█ We are mindful the California courts may construe state constitutional provisions to provide more protection for a criminal defendant than does the federal Constitution. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086]; see also Cal. Const., art. I, § 24, and *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077].) The California Supreme Court has recognized, however, that we should give deference to decisions of the United States Supreme Court interpreting similar basic rights in the absence of good cause for departure or deviation therefrom. (52 Cal.3d at p. 353.) Nothing in Jurado's tactical decision to plead guilty in an apparent effort to foreclose reinstatement of a properly charged special circumstance should compel a California court to chart a course separate from the decision of the United States Supreme Court analyzing a virtually identical tactic. (See *Ohio* v. *Johnson* (1984) 467 U.S. 493, 501-502 [81 L.Ed.2d 425, 434-435, 104 S.Ct. 2536].)

█ Dismissal of a charging allegation pursuant to section 995 is not a postjeopardy determination. While principles of double jeopardy are often

difficult to define in precise terms, determination of when jeopardy attaches is not. Jeopardy occurs when a defendant is taken to trial on an accusatory pleading in a jurisdictionally competent court. The point in the trial when jeopardy actually attaches is the swearing of the jury in a jury trial and the taking of evidence in a court trial. (*Crist* v. *Bretz* (1978) 437 U.S. 28, 35 [57 L.Ed.2d 24, 31, 98 S.Ct. 2156]; *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 601.) Moreover, jeopardy bars retrial following conviction for the "same offense." (*Burks* v. *United States, supra,* 437 U.S. 1, [57 L.Ed.2d 1, 9-10].) It is clear Jurado was never placed in jeopardy on the special circumstance of lying in wait. He was not tried or convicted on that "offense." Nor does a prejeopardy dismissal of a charging allegation constitute an acquittal. (*Serfass* v. *United States* (1975) 420 U.S. 377, 393 [43 L.Ed.2d 265, 277, 95 S.Ct. 1055]; *United States* v. *Scott* (1978) 437 U.S. 82 [57 L.Ed.2d 65, 98 S.Ct. 2187]; *People* v. *Jackson* (1991) 1 Cal.App.4th 697, 701 [2 Cal.Rptr.2d 308].)

 The lying-in-wait special circumstance is not a lesser included offense of the charged murder to which Jurado pled, nor is it an added element which would create a greater offense out of the charged murder. Rather, a special circumstance is a penalty enhancement and not an element of the murder offense. (*People* v. *Odle* (1988) 45 Cal.3d 386, 411, fn. 11 [247 Cal.Rptr. 137, 754 P.2d 184].) Penalty enhancements are not part of the greater or lesser offense analysis. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 101 [192 Cal.Rptr. 748, 665 P.2d 520].) In California criminal procedure special circumstances are decided during the guilt phase, after a verdict of first degree murder has been reached by the jury. (*People* v. *Odle, supra,* 45 Cal.3d at p. 411, fn. 11.)

 Jurado and amicus curiae Appellate Defenders, Inc. (ADI) rely heavily on *People* v. *Mims* (1955) 136 Cal.App.2d 828, 831 [289 P.2d 539] to support the claim his plea to the murder charge bars reinstatement of the special circumstance.[5] We find *Mims* inapposite to this case. In *Mims* the defendant had pled guilty to petty theft in violation of section 488. Before the defendant could be sentenced, the district attorney successfully moved

---

[5]Amicus curiae ADI urges us to decide this case on statutory grounds pursuant to section 1023. That section provides as follows: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

We do not find the statute controlling. The statute was intended to codify the basic protections of double jeopardy. (*People* v. *Bivens* (1991) 231 Cal.App.3d 653, 658-659 [282 Cal.Rptr. 438].) The question in this case, however, is whether Jurado was "convicted" of the same offense. We must analyze decisional law to resolve that question. Section 1023 does not assist us, nor is it controlling, on the issue before this court.

the municipal court to set aside the guilty plea. The district attorney there-after charged Mims with section 666 (petty theft after a prior theft, a felony). Mims claimed jeopardy and the Court of Appeal agreed.

In its analysis, the Court of Appeal began with the premise "[i]t is agreed that the charge of petty theft to which respondent pleaded guilty was an offense necessarily included in the later charge of violating [section] 666." (*People* v. *Mims, supra,* 136 Cal.App.2d at p. 830.) The Court of Appeal thus found the plea to be a conviction of a lesser included offense of section 666 and therefore a bar to further prosecution for that "same offense."

Jurado's case is different in its beginning point. The lying-in-wait special circumstance is not involved as a greater or lesser offense of the charges to which he has pled. Further, *Mims*'s analysis of the relationship of sections 666 and 488 is doubtful in itself in light of the recent decision of the California Supreme Court in *People* v. *Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076], holding the prior theft conviction is not an element of the crime of petty theft after a prior, but is rather a penalty enhancement. Moreover, other case law since *Mims* has cast doubt on the validity of its reasoning.

In *People* v. *Tideman* (1962) 57 Cal.2d 574 [21 Cal.Rptr. 207, 370 P.2d 1007], the court dealt with a defendant who was charged with abortion and murder arising from that abortion. The defendant pled guilty to abortion and then claimed double jeopardy barred his trial on murder, as abortion was a lesser included offense in that case. Before Tideman was sentenced for the abortion charge, he was convicted in a jury trial of the murder offense. The Supreme Court found no double jeopardy bar to the murder conviction. Noting this was an action which included multiple charges in a single accusatory pleading as authorized by section 954, the court concluded the plea to one count did not stand as an acquittal of the other charged count. The court found section 1023 did not bar prosecution of the remaining count in the same information.

The defendant in *Tideman* relied on *Mims* and *People* v. *Blue* (1958) 161 Cal.App.2d 1 [326 P.2d 183], which had followed the *Mims* reasoning. The Supreme Court found *Mims* provided no support for the defendant. It held that the opinion in *Blue* was mistaken in applying double jeopardy to multiple counts in the same pleading. More importantly, the court distin-guished *People* v. *Krupa* (1944) 64 Cal.App.2d 592 [149 P.2d 416] on which *Mims* had relied. The court said *Krupa* dealt with a person who had not only been convicted by plea, but had been *sentenced and punished.* (*People* v. *Tideman, supra,* 57 Cal.2d at p. 588.)

Thus, not only is *Mims* distinguishable because it assumed it was dealing with a lesser included offense, but the authority on which it relied was distinguished away by a subsequent Supreme Court decision.

The case which most closely resembles this case, and from which we receive the most guidance, is *Ohio* v. *Johnson, supra,* 467 U.S. 493, 500-502 [81 L.Ed.2d 425, 434-435]. In that case the defendant was charged with murder, involuntary manslaughter, aggravated robbery, and grand theft. Over the state's objection, the defendant pled guilty to manslaughter and grand theft. The trial court then dismissed the balance of the charges on double jeopardy grounds. The Ohio Supreme Court affirmed the trial court. The United States Supreme Court reversed.

The court in *Johnson* first accepted that manslaughter and grand theft were probably lesser included offenses of murder and robbery in Ohio. The court noted that Ohio did not permit cumulative punishment for those charges, but that the issue was not cumulative punishment, but rather whether the guilty plea barred trial on the remaining charges. The court said, "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution." (*Ohio* v. *Johnson, supra,* 467 U.S. at p. 500 [81 L.Ed.2d at p. 434].)

The defendant in *Johnson* argued nonetheless his conviction should serve as a bar to further prosecution. In response the court said, "The answer to this contention seems obvious to us . . . . Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge concluded. We have never held that, and decline to hold it now." (*Ohio* v. *Johnson, supra,* 467 U.S. at pp. 500-501 [81 L.Ed.2d at p. 434].) The court distinguished its previous holding in *Brown* v. *Ohio* (1977) 432 U.S. 161 [53 L.Ed.2d 187, 97 S.Ct. 2221], finding in the *Johnson* case there was no double jeopardy interest protected which would be violated by proceeding on the remaining charges. The court found Johnson had not been exposed to conviction on the dismissed charges, ". . . nor ha[d] the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial." (*Ohio* v. *Johnson, supra,* 467 U.S. at p. 501 [81 L.Ed.2d at p. 435].)

The facts in *Johnson* presented none of the types of governmental overreaching the double jeopardy clause is designed to protect against. The court

said, "On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws," citing *Arizona* v. *Washington* (1978) 434 U.S. 497, 509 [54 L.Ed.2d 717, 730, 98 S.Ct. 824]. (*Ohio* v. *Johnson, supra,* 467 U.S. at p. 502 [81 L.Ed.2d at p. 435].) The court continued, "Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." (*Ibid.*)

 Jurado and amicus curiae ADI try to avoid the clear applicability of *Ohio* v. *Johnson* by claiming the district attorney did not sufficiently object to Jurado's plea. It is claimed the district attorney allowed Jurado to place himself in jeopardy and should have done more to prevent the plea or to more "affirmatively" object to it. We find such argument to be meritless.

First we note Jurado pled to the "face" of the remaining pleading. He did not strike a plea bargain, but rather admitted all remaining charges and allegations. We think he was entitled by section 1016 to enter a guilty plea if he was otherwise competent to do so. Certainly the plea was without the district attorney's concurrence as the prosecutor refused to sign the change of plea form. The record demonstrates much more than "non-concurrence." The prosecutor several times advised the court and Jurado he would be reviewing the possibility of seeking a writ in this court to set aside the trial court's dismissal of the special circumstance. Prior to the plea, the prosecutor stated:

"MR. PETTINE: Your Honor, just for the record, I've advised counsel that the People would not be signing the change of plea form. I know he can plead to the face at any time, but consulting with Mr. Fisher there's a possibility that the People may take a writ on the ruling by the court. So I just wanted counsel to be aware that the plea could conceivably be set aside at a later time depending on how that procedure goes." The court repeated a warning on the possibility of writ review in its admonition to Jurado when it said, "Now, aside from the legal issue that remains unresolved, in the sense that the People may seek to get a review of my ruling by the Court of Appeal, if the Court of Appeal reverses me then we'll be back in a little different posture. . . ."

During the change of plea process, the court repeated its admonition on the possibility of review when it was questioning Jurado in the context of warning him as to the possible consequences of statements made in the plea proceeding and their impact on the possibility of a later trial. The court said:

"THE COURT: Maybe at this point we need to take a step backwards just for a minute.

"Mr. Pettine, so I'm sure I understand your position, if the decision is to pursue a writ to review my ruling on the 995 on the special circumstances allegation, and the Court of Appeal agrees with your position, so my ruling is reversed and the special circumstances allegation is reinstated, then I assume if it was the further decision of your office to proceed against Mr. Jurado on that basis that you would contemplate that he would be allowed to withdraw his plea and—pleas, and we'd be back basically to where we started before I made my ruling?

"Is that—the reason I mention that is, I think if that's the position, then perhaps he needs to be advised that anything he says here in connection with entering this plea, if the plea is withdrawn and, you know, the special circumstances are reinstated, could not be used against him at the trial on the merits. I think that's a correct statement of the law and I—I think maybe he needs to understand that. Is that—"[6]

It is apparent Jurado made a conscious decision to plead guilty in the face of the possibility there would be writ review and that the special circumstance could be reinstated. The reason for this decision on his part is obvious. Jurado was attempting to cut off the district attorney's ability to get the special circumstance reinstated. The trial court summed up the reasons for Jurado's plea fairly well in his early discussions with him. The court said:

"All right. So basically you're pleading guilty to or admitting everything that presently is pending against you because I've stricken the special circumstances. But basically you're admitting and pleading guilty to everything else that's before you here. Nothing else is being dismissed. And the law, of course, prescribes the term for these sentences so there's really no sentence bargaining here."

Jurado was never in jeopardy for the special circumstance, nor was he ever convicted or acquitted of that charge. Since the special circumstance

---

[6]The question of whether Jurado should be entitled to set aside his guilty plea upon the reinstatement of the special circumstance is not before us. The decision to permit or not to permit a defendant to set aside a guilty plea is one vested in the sound discretion of the trial court. That discretion has not yet been exercised and we express no opinion on the proper determination of that issue should it be raised in the trial court.

We do note, however, the court's reference to the withdrawal of the plea is ambiguous insofar as it fails to address the evidentiary implications of a refusal to withdraw the plea. Accordingly, we think it would be unfair, in the event the plea is not withdrawn, to allow Jurado's statements to the trial court to be received in evidence at a trial on the special circumstance. Should such evidence be offered at trial, fundamental fairness requires the trial court to exclude it.

is not in a lesser- or greater-offense relationship to the murder, there is no reason to allow Jurado's tactical maneuver to deny the People the right to a trial on the merits of that allegation. Ordinarily, the prosecutor is entitled to "one full and fair opportunity to present his evidence to an impartial jury." (*Arizona* v. *Washington, supra,* 434 U.S. 497, 505 [54 L.Ed.2d 717, 728].) Nothing in this record compels a different result. We find no double jeopardy bar to our review of the ruling on the 995 motion, or to the reinstatement of the improperly dismissed special circumstance.[7]

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order granting Jurado's motion to dismiss the lying-in-wait special-circumstance allegation and enter a new order denying the motion in its entirety. The stay issued by this court on December 20, 1991, is vacated.

Wiener, Acting P. J., and Todd, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 11, 1992. Mosk, J., was of the opinion that the petition should be granted.

---

[7]Jurado argues we should deny this petition because of the prosecutor's delay. Acknowledging the 15-day rule of section 999a does not apply to the prosecutor, Jurado nonetheless argues the 21 days between the plea and the filing of the petition ought to bar relief. Jurado cites no pertinent authority to support that result and has shown absolutely no prejudice as the result of any prefiling delay. We see no reason on this record to avoid review on the merits because of alleged delay.