Filed 9/25/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Appellant,<br><br>　　　　v.<br><br>EDWARD WAYNE REID,<br><br>　　Defendant and Respondent. | G064127<br><br>(Super. Ct. No. INF2301222)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, James S. Hawkins, Judge (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.). Reversed and remanded with directions.

Michael A. Hestrin, District Attorney, Jesse Male and Kristen Allison, Deputy District Attorneys, for Plaintiff and Appellant.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Respondent.

\*　　　　\*　　　　\*

Domestic violence occurs when a person "willfully inflicts *corporal injury* resulting in a *traumatic condition* upon a" protected victim. (Pen. Code, § 273.5, subd. (a), italics added.)[1] A "'*traumatic condition*' means a condition of the body . . . including . . . injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force. For purposes of this section, 'strangulation' and 'suffocation' include *impeding the normal breathing or circulation of the blood of a person* by applying pressure on the throat or neck." (§ 273.5 (d), italics added.)

Here, the People filed a complaint charging Edward Wayne Reid with committing two crimes upon Jane Doe (Jane): (1) assault by means of force likely to produce great bodily injury; and (2) willfully inflicting *corporal injury* upon a domestic partner resulting in a *traumatic condition*.

At a preliminary hearing, Jane testified that Reid had grabbed her by the throat with his hand and applied pressure. Jane said it was painful, and she had difficulty breathing. Jane further told a deputy that Reid choked her for about 30 seconds, and she had difficulty swallowing. Jane also told the deputy that she saw stars, and she felt a little dizzy or faint.

The magistrate did not hold Reid to answer on the domestic violence charge (count two), stating: "I don't think that there is evidence of a *traumatic injury*."[2] (Italics added.) The People filed an information again alleging both counts. Reid filed a motion to set aside (dismiss) count two. (§ 995.) The trial court granted the motion. The People appeal.

---

[1] Further undesignated statutory references are to the Penal Code; we shall also omit the word "subdivision" or its abbreviation.

[2] We note that section 273.5 (d) refers to a "corporal injury resulting in a traumatic condition," not a "traumatic injury."

2

"We will not set aside an information 'if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.'" (*People v. San Nicolas* (2004) 34 Cal.4th 614, 654.)

We hold that when a defendant's infliction of *corporal injury* upon a domestic violence victim involves strangulation or suffocation, courts are to apply the definition of a *traumatic condition* as provided for in the statute: "impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck." (§ 273.5 (d).)[3]

Here, we find the evidence provided a rational ground for assuming Reid inflicted *corporal injury* upon Jane through choking, which resulted in a *traumatic condition*. That is, the alleged impeding of Jane's ability to breathe normally, and/or the possible impeding of the circulation of Jane's blood to her brain, were the physical manifestations—traumatic conditions—resulting from Reid's infliction of corporal injury.

Thus, we reverse the order of dismissal.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The People filed a complaint charging Reid with an assault by means of force likely to produce great bodily injury (count one), and inflicting a corporal injury resulting in a traumatic condition (count two). The People further alleged a strike prior, and gave notice that they intended to admit evidence of Reid's alleged prior acts of domestic violence.

Jane testified at the preliminary hearing. She said that on the

_____

[3] This issue appears to have been previously addressed only in secondary sources and unpublished opinions, so we are certifying this opinion for publication. (See Cal. Rules of Court, rule 8.1105(c)(2).)

3

night in question she and Reid were living together in a small trailer. Jane said she was on the way home when she spoke to Reid over the phone. Reid was upset because Jane asked him to buy dog food, and she had also interrupted a movie Reid was watching.

Jane testified that when she got home, she asked Reid for a bank card so she could go buy the dog food. Jane said Reid got even more upset because "I'm not allowed to have access to it." Jane explained, "He controls everything. He controls all the money . . . ." Jane said that at some point she threw a soda at Reid because he had hung up on her. Reid then threw the remote control at Jane, hitting her stomach.

Jane testified Reid then got up off a recliner and grabbed her throat with his right hand while she was standing. As Reid applied pressure to her throat, "He raised his left fist and said, 'I wish I f**king could.'" Jane was asked, "As he's applying the pressure, are you having any problems breathing?" Jane responded, "Yes." Jane said she was afraid Reid was "going to kill me." When asked if she started to feel dizzy, she said, "It was just tight. It hurt." Jane said she "did not lose consciousness." Jane said she did not know how long the choking lasted, but eventually Reid "let go." Jane testified she did not call the police because, "I always seem to protect him."

When asked to describe her pain as the night went on, Jane said that she "could feel where his hand was. I suffer from chronic neck pain, so it was just tender." The following morning there was another verbal and physical confrontation with Reid, and Jane called 911.

A deputy responded at about 8:00 a.m. The deputy testified at the preliminary hearing. The deputy said Jane was upset and crying when he spoke to her. When asked to describe what Jane said about what Reid had done to her, the following exchange took place:

4

"[Prosecutor:] Okay. What did she tell you about when Mr. Reid had put his hand on her throat?

"[Deputy:] She said that she was very afraid at the time. She could not speak. She saw the black in Mr. Reid's eyes and the evil, and she was extremely afraid. And when the pressure was applied to her throat, that she saw spots, had difficulty swallowing, and was a little dizzy and faint, and she -- for approximately 30 seconds she was -- the pressure was applied."

The deputy also testified that Jane told him she had difficulty breathing as well.

At the end of the hearing, the magistrate found probable cause to hold Reid to answer for a violation of count one (assault with force likely to cause great bodily injury).[4] "As far as Count 2 is concerned, I don't think that there is evidence of a *traumatic injury*. Although it might have been a traumatic situation, a *traumatic injury* is defined in a very particular way, and I don't think there's any evidence of a *traumatic injury*, but I think there was force used likely to cause great bodily injury under Count 1. [¶] So Count 2 is ordered discharged." (Italics added.)

The People filed an information again charging Reid with an assault by means of force likely to produce great bodily injury (count one), and inflicting a corporal injury resulting in a traumatic condition (count

---

[4] A superior court judge sits as a magistrate when he or she presides at a preliminary hearing. (*People v. Richardson* (2007) 156 Cal.App.4th 574, 584.)

two).[5] The People again alleged a strike prior, and gave notice of their intent to admit evidence of Reid's alleged prior acts of domestic violence.

Reid filed a section 995 motion to set aside count two of the information. The People filed an opposition.

At the hearing on the section 995 motion, the trial court judge said he read the preliminary hearing transcript and spoke to the magistrate. According to the trial court judge, the magistrate told him that "he made a factual finding." After hearing arguments, the court quoted the magistrate's ruling verbatim and stated, "So I'll grant the 995."[6]

Reid pleaded guilty to the assault charge and admitted the strike prior. The trial court then imposed an indicated sentence of four years in state prison (the low term doubled).

The People filed an appeal. (See § 1238 (a) ["An appeal may be taken by the people from any of the following: [¶] (1) An order setting aside all or any portion of the indictment, information, or complaint"].)

---

[5] The prosecution may "file an information against a defendant containing charges not contained in the [magistrate's] order of commitment." (*People v. Graff* (2009) 170 Cal.App.4th 345, 360.)

[6] We note that there are a couple of things wrong here.

First, in a section 995 motion, the superior court judge "sits merely as a reviewing court." (*People v. Laiwa* (1983) 34 Cal.3d 711, 718.) As such, the scope of his or her review is confined to "the 'four corners' of the preliminary hearing transcript." (*People v. Duncan* (2000) 78 Cal.App.4th 765, 772.) Thus, in this case it was improper for the 995 judge to consult with the magistrate about the ruling at the preliminary hearing, just as it would be improper for an appellate court justice to consult with a superior court judge about his or her rulings in any particular case.

Second, as both parties appear to acknowledge, the magistrate, in fact, did not make a factual finding at the preliminary hearing. (See *People v. Superior Court* (*Day*) (1985) 174 Cal.App.3d 1008, 1017 ["A mere refusal to hold to answer does not amount to a factual determination"].)

6

## II.

## DISCUSSION

The People contend that the trial court erred by granting Reid's section 995 motion to set aside (dismiss) the section 273.5 charge as alleged in count two of the information. We agree.

In this discussion, we will: A) explain the controlling standard of review; B) summarize the relevant principles of law regarding a section 273.5 charge; and C) apply and analyze the facts presented at the preliminary hearing to the relevant principles of law.

### A. *Standard of Review*

"In reviewing a trial court's ruling on a section 995 motion, we disregard the ruling of the trial court and directly review the magistrate's ruling." (*People v. Superior Court (Mendez)* (2022) 86 Cal.App.5th 268, 277.) When an order denying a section 995 motion "rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072 (*Lexin*).)

"In determining if charges in an information can withstand a motion under section 995, neither the superior court nor the appellate court may reweigh the evidence or determine the credibility of the witnesses." (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226 (*Jurado*).) That is, "if there is *some evidence* in support of the information, the reviewing court will not inquire into its sufficiency. [Citations.] Thus, an . . . information should be set aside *only when there is a total absence of evidence* to support a necessary element of the offense charged." (*Ibid.*, italics added.)

It is well settled that "the showing required at a preliminary hearing is exceedingly low." (*Salazar v. Superior Court* (2000) 83 Cal.App.4th

7

840, 846.) This exceedingly low threshold means that "although there must be *some* showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate." (*Williams v. Superior Court* (1969) 71 Cal.2d 1144, 1148.)

"Reasonable or probable cause . . . exists ""if there is some rational ground for assuming the possibility that an offense has been committed and the [defendant] is guilty of it.""" (*People v. Moyer* (2023) 94 Cal.App.5th 999, 1018.) The evidence at the preliminary hearing or the section 995 motion stage of "a prosecution 'need not be sufficient to support a conviction.'" (*People v. Scully* (2021) 11 Cal.5th 542, 582.)

To the extent the review of a "section 995 motion rests on issues of statutory interpretation, our review is de novo." (*Lexin, supra,* 47 Cal.4th at p. 1072.) "'The fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature.'" (*People v. Moore* (2004) 118 Cal.App.4th 74, 77–78.) We begin by examining the language in the statute, giving the words their plain meaning. (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Ibid.*)

B.  *Relevant Principles of Law*

"The purpose of section 273.5 is to protect persons . . . in a special relationship for which society demands, and the victim may reasonably expect, stability and safety, and in which the victim, for these reasons among others, may be especially vulnerable." (*People v. Vega* (1995) 33 Cal.App.4th 706, 710.)

8

A defendant violates section 273.5 when he or she "willfully inflicts *corporal injury* resulting in *a traumatic condition*" upon one's spouse, domestic partner, etc. (§ 273.5 (a) & (b)(1)-(4), italics added.) There are two elements of the crime: (1) the willful infliction by a defendant of *corporal injury* upon a protected person; and (2) that the corporal (bodily) injury resulted in a *traumatic condition*.[7] (§ 273.5 (a).)

The term "corporal injury" is defined using its ordinarily understood language and plain meaning. (*People v. Serrano* (2022) 77 Cal.App.5th 902, 919 ["The term 'corporal injury' is unambiguous and means bodily injury"].) The word "corporal" means "of, relating to, or affecting the body." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 279, col. 2.) The word "injury" is defined as "hurt, damage, or loss sustained." (Merriam-Webster's Collegiate Dict., *supra*, at p. 644, col. 1.)

Conversely, the term "traumatic condition" is statutorily defined by the Legislature. (*People v. Serrano, supra,* 77 Cal.App.5th at p. 919.) Prior to January 1, 2012, the statute provided: "As used in this section, 'traumatic condition' means a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force." (Former § 273.5 (c), as amended by stats. 2007, ch. 582, § 1.)

The statute now provides: "As used in this section, 'traumatic condition' means a condition of the body, such as a wound, or external or

---

[7] The recommended pattern jury instruction provides: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully . . . inflicted a physical injury on (his/her) ([former] spouse/[former] cohabitant/the (mother/father) of (his/her) child/someone with whom (he/she) had, or previously had, an engagement or dating relationship); [¶] [AND] [¶] 2. The injury inflicted by the defendant resulted in a traumatic condition." (CALCRIM No. 840.)

internal injury, <u>including, but not limited to, injury as a result of strangulation or suffocation</u>, whether of a minor or serious nature, caused by a physical force. <u>For purposes of this section, 'strangulation' and 'suffocation' include impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck</u>." (§ 273.5 (d), underlining added.)

The above underlined changes were the result of Senate Bill No. 430, which was also "known as the 'Diana Gonzalez Strangulation Prevention Act of 2011.'" (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 430 (2011–2012 Reg. Sess.) as amended June 15, 2011.)

"According to the author, 'SB 430 seeks to rectify the fact that strangulation and suffocation cases are often overlooked under existing statutes. Recent research has confirmed that strangulation is one of the most lethal forms of violence in domestic violence and sexual assault cases. Prior to the research and recent focus on strangulation training programs and specialized intervention processes, this lethal violence was often minimized. In many cases, the lack of physical evidence caused the criminal justice system to treat "choking" cases as minor incidents, much like a slap to the face where only redness might appear. Today, based on the involvement of the medical profession, specialized training for police and prosecutors, and ongoing research, strangulation has become a focus area for policy makers and professionals working to reduce intimate partner violence and sexual assault.'" (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 430, *supra*, as amended June 15, 2011.)

"Almost half of domestic violence homicide victims experienced at least one episode of attempted strangulation prior to a lethal or near-lethal violent incident. Victims of prior attempted strangulation are seven times more likely to become a homicide victim. In order to combat this criminal

10

behavior, thirty states have passed special strangulation statutes. By providing clear legislation to guide judges and juries in addressing this extremely lethal form of violence which occurs particularly often in domestic violence cases, homicides will be reduced, lives saved, and surviving victims will enter a more informed and responsive criminal justice system."[8] (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 430 (2011–2012 Reg. Sess.) as introduced Feb. 16, 2011.)

It is well established that "the Bench Notes and the CALCRIM jury instructions are not themselves legal authority." (*People v. Johnson* (2016) 243 Cal.App.4th 1247, 1269; see also *People v. Mojica* (2006) 139 Cal.App.4th 1197, 1204, fn. 4 ["Although pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, they are not the law and are not binding"].)

However, the "jury instructions approved by the Judicial Council are the official instructions for use in the state of California." (Cal. Rules of Court, rule 2.1050(a).) The Bench Notes to CALCRIM No. 840 (Inflicting Injury on Spouse, Cohabitant, or Fellow Parent Resulting in a Traumatic Condition) advise a trial court that: "If there is evidence that the traumatic condition resulted from strangulation or suffocation, consider instructing according to the *special definition* provided in Pen. Code, § 273.5(d)." (Bench Notes to CALCRIM No. 840 (2024) p. 563, italics added.)

---

[8] The State of Texas appears to be one of the 30 states referenced in the legislative analysis that have passed a strangulation statute: "While the statute does not define 'impeding the normal breathing of a person,' an impediment is ordinarily understood as '[a] hindrance or obstruction.' In other words, obstructing or impeding a person's ability to breath impairs a person's physical condition—a form of bodily injury." (*Marshall v. State* (Tex. Crim. App. 2016) 479 S.W.3d 840, 844, fn. omitted.)

11

California case law interpreting section 273.5 makes clear that even a "minor injury [is] sufficient to satisfy the statutory definition" of a traumatic condition. (*People v. Abrego* (1993) 21 Cal.App.4th 133, 138 (*Abrego*).) Courts have further interpreted the term "traumatic condition" to mean ""'a wound or *other abnormal bodily condition* resulting from the application of some external force.'""" (*Id.* at p. 137, italics added.)

The harm to the victim required to satisfy the "traumatic condition" element of section 273.5, is a lesser degree of harm than what is required under other criminal statutes: "Some other offenses do require *higher degrees of harm* to be inflicted before the crime denounced by them is committed: felony battery, section 243, subdivision (d), requires 'serious bodily injury'; and, felony assault, section 245, subdivision (a), requires 'force likely to produce great bodily injury.' But, the Legislature has clothed persons . . . in intimate relationships with greater protection by requiring *less harm* to be inflicted before the offense is committed."[9] (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952, italics added.)

## C. Application and Analysis

Our analysis focuses on whether there was some evidence presented at the preliminary hearing supporting the two elements of the charge: (1) that Reid willfully inflicted *corporal injury* upon Jane; and (2) that Jane's bodily injury resulted in a *traumatic condition*. (§ 273.5 (a).)

---

[9] Under the felony battery statute: "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: *loss of consciousness*; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243 (f)(4), italics added.)

As to the first element, Jane testified that Reid grabbed her throat with his right hand and applied pressure. She said the pressure was "tight" and this "hurt." The deputy testified that Jane told him that this painful choking of her throat lasted for about 30 seconds.

Based on this evidence, we find there is a rational ground for assuming (i.e., probable cause) that Reid inflicted *corporal injury* upon Jane within the plain meaning of those two italicized words. (See § 273.5 (a).) That is, there is some evidence Reid willfully hurt Jane's body by the application of force. (See Merriam-Webster's Collegiate Dict., *supra*, at p. 644, col. 1 [the word "injury" means a "hurt, damage, or loss sustained"]; see also Merriam-Webster's Collegiate Dict., *supra*, at p. 279, col. 2 [the word "corporal" means "of, relating to, or affecting the body"]; see also *Jurado*, *supra*, 4 Cal.App.4th at p. 1226 ["if there is *some evidence* in support of the information, the reviewing court will not inquire into its sufficiency"], italics added.)

As to the second element, Jane testified when Reid grabbed her throat with his right hand and applied pressure, she had problems breathing. The deputy additionally testified that Jane told him that "when the pressure was applied to her throat" for about 30 seconds "that she saw spots, had difficulty swallowing, and was a little dizzy and faint."

Based on the evidence that Reid applied pressure to Jane's throat or neck (i.e., choking), we find there is a rational ground for assuming (i.e., probable cause) that Jane's bodily injury then resulted in a "traumatic condition" as that term is defined: "'strangulation' and 'suffocation' include impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck." (§ 273.5 (d).) That is, as to the testimony about Jane having difficulty breathing and swallowing, it is plainly evident that Reid was allegedly "impeding the normal breathing" of Jane as

13

he was applying pressure to her throat or neck. (See § 273.5 (d); see also *Abrego, supra,* 21 Cal.App.4th at p. 137 [a traumatic condition includes an """"abnormal bodily condition resulting from the application of some external force""""].) And as to the testimony about Jane seeing "spots" and feeling "a little dizzy and faint" during the choking, this evidence supports a reasonable inference that Reid had also impeded the circulation of blood to Jane's brain. (See *Lexin, supra,* 47 Cal.4th at p. 1072 ["we must draw all reasonable inferences in favor of the information"].)

We further note that if loss of consciousness is sufficient to establish a felony battery under the "serious bodily injury" standard of section 243 (f)(4), and the Legislature has determined that *less harm* is sufficient to satisfy the "traumatic condition" standard of section 273.5, then it follows that Jane's alleged possible *loss of consciousness* (i.e., seeing spots and feeling dizzy or faint) was sufficient to support a probable cause finding that the preliminary hearing evidence satisfied the lower section 273.5 standard of harm. (See *People v. Gutierrez, supra,* 171 Cal.App.3d at p. 952.)

In sum, the alleged impeding of Jane's ability to breathe normally, and/or the alleged possible impeding of the circulation of Jane's blood to her brain, were the physical manifestations—traumatic conditions—resulting from Reid's infliction of corporal injury. That is, there was "some evidence" to support each element of the section 273.5 (a) charge the People alleged in the information. Thus, we must reverse the trial court's order granting Reid's section 955 motion to set aside that charge (count two). (See *Jurado, supra,* 4 Cal.App.4th at p. 1226.)

Reid argues the case of *Abrego, supra,* 21 Cal.App.4th 133, compels a different result. We disagree.

In *Abrego*, the defendant "slapped or punched [the victim] five

14

times in the face and head." (*Abrego, supra,* 21 Cal.App.4th at p. 135.) The victim "told an investigating officer that she felt pain and tenderness where she had been struck, although the officer did not observe any injuries." (*Ibid.*) At trial, the victim claimed that when the defendant "struck her, she was drunk, and she did not feel any pain." She further testified that she was not injured or bruised. (*Id.* at p. 136.) The jury found the defendant guilty of inflicting a corporal injury resulting in a traumatic condition, but the Court of Appeal found there was insufficient evidence to support the conviction. (*Id.* at p. 138.) The Court held that although there was evidence the defendant inflicted corporal injury, "the soreness and tenderness [the victim] experienced were [not] sufficient to constitute a *traumatic condition* within the meaning of section 273.5." (*Ibid.*, italics added.)

We find the *Abrego* opinion to be readily distinguishable in a number of ways. (See *Abrego, supra,* 21 Cal.App.4th 133.) Procedurally, *Abrego* involved a conviction following a trial, rather than a dismissal after a preliminary hearing, so the standards of review are not the same. (See *Salazar v. Superior Court, supra,* 83 Cal.App.4th at p. 846 ["the showing required at a preliminary hearing is exceedingly low"]; *People v. Scully, supra,* 11 Cal.5th at p. 582 ["'Evidence that will justify a prosecution need not be sufficient to support a conviction'"].)

But more importantly on the merits, there was no evidence that the defendant in *Abrego, supra,* 21 Cal.App.4th 133, applied pressure to the victim's throat or neck (i.e., choking), as was alleged to have occurred in the instant case. Further, in *Abrego* there was no evidence of any physical manifestation of the victim's pain, whereas in this case there was evidence that Jane had difficulty breathing, swallowing, and she felt a little dizzy or faint. Moreover, the date of the *Abrego* opinion (1993) predated the 2012

15

amendment of section 273.5 through the Legislature's passage of the Diana Gonzalez Strangulation Prevention Act of 2011.

In sum, the *Abrego* opinion is inapposite, and it does not inform or alter our legal analysis. (See *Abrego, supra,* 21 Cal.App.4th 133.)

Reid also argues: "The trial court properly granted the defense's motion to set aside count two because there is no evidence respondent inflicted an injury on the victim that resulted in a *traumatic injury*." (Capitalization & boldface omitted, italics added.) We disagree.

To begin with, just as the magistrate misspoke at the preliminary hearing (by repeatedly using the term "traumatic injury"), Reid has also erroneously blended the terms "traumatic condition" and "corporal injury." We again reiterate that the statute refers to "corporal injury *resulting in* a traumatic condition" (§ 273.5 (d), italics added); the statute simply does <u>not</u> employ the term—nor does it require—a "traumatic injury." Reid's argument also appears to ignore the evidence of Jane's difficulty in breathing, and the evidence of her feeling dizzy or faint, as well as ignoring the Legislature's passage of the Diana Gonzalez Strangulation Prevention Act of 2011.

Based on the plain language of section 273.5, as well as its legislative history, it is apparent that the Legislature's intent was to modify the definition of a "traumatic condition" when there is evidence that a defendant has willfully applied force to a domestic violence victim's throat or neck (i.e., choking). (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 430, *supra*, as amended June 15, 2011 ["According to the author, 'SB 430 seeks to rectify the fact that strangulation and suffocation cases are often overlooked *under existing statutes*. Recent research has confirmed that strangulation is one of the most lethal forms of violence in domestic violence and sexual assault cases"], italics added; accord, Bench Notes to CALCRIM

16

No. 840 (2024) p. 563 ["If there is evidence that the traumatic condition resulted from strangulation or suffocation, consider instructing according to *the special definition* provided in Pen. Code, § 273.5(d)"], italics added; see also § 273.5 (d) ["For purposes of this section, 'strangulation' and 'suffocation' include *impeding the normal breathing or circulation of the blood* of a person by applying pressure on the throat or neck"], italics added.)

Reid's argument may also stem from the common usage of the word "traumatic," which tends to convey a heightened level of severity. (See *United States v. Moses* (6th Cir. 1998) 137 F.3d 894, 899 [one common meaning of "trauma" is "'emotional wound or shock that creates substantial, lasting damage'"].) That is, perhaps some judges or jurors may wrongly presume that a victim's difficulty in breathing, or a victim's feeling of dizziness as a result of being choked, could not qualify as a "traumatic injury" under the common usage of that phrase. However, the phrase "traumatic condition" as of January 1, 2012, is now defined to address those factual circumstances. (See Sen. Com. on Public Safety, Analysis of Sen. Bill No. 430, *supra*, as introduced Feb. 16, 2011. ["By providing clear legislation to guide judges and juries in addressing this extremely lethal form of violence which occurs particularly often in domestic violence cases, homicides will be reduced, lives saved, and surviving victims will enter a more informed and responsive criminal justice system"]; see also § 273.5 (d) [a domestic violence victim's "'traumatic condition'" may be "of a minor or serious nature"]; see also *People v. Cameron* (1975) 53 Cal.App.3d 786, 797 ["a 'traumatic condition is an abnormal condition of the living body produced by violence'"].)

Reid also argues that the deputy "testified that she told him she 'felt dizzy or faint,' 'was coughing,' and 'had trouble swallowing' afterward but, at the [preliminary] hearing, the victim denied that she had 'any

17

difficulty swallowing or anything like that.'"

But it is not the role of this court in an appeal from the granting of a section 995 motion—nor is it the role of a trial court—to attempt to resolve any inconsistencies in the preliminary hearing evidence. "In determining if charges in an information can withstand a motion under section 995, neither the superior court nor the appellate court may reweigh the evidence or determine the credibility of the witnesses." (*Jurado, supra,* 4 Cal.App.4th at p. 1226.) That is, "if there is *some evidence* in support of the information, the reviewing court will not inquire into its sufficiency." (*Ibid.*, italics added.) Of course, any perceived discrepancies in the evidence could potentially be raised at a later trial.

We also note that it is an unfortunate, but well understood aspect of domestic violence cases, that victims often minimize the abuse inflicted by their abusers. Based on the transcript of the preliminary hearing, it appears the People called the deputy to testify immediately after Jane had testified precisely for this reason (Jane said it was her tendency "to protect" Reid).

Finally, Reid argues that "the standard at a preliminary hearing is not whether there is a 'rational ground for assuming the possibility' of an element of an alleged offense as appellant has repeatedly argued; rather, the standard is whether there is probable cause to hold the defendant over on the alleged offense." But this is a distinction without a difference. (See *People v. Moyer, supra,* 94 Cal.App.5th at p. 1018 ["Reasonable or probable cause . . . exists ""if there is some rational ground for assuming the possibility that an offense has been committed"""].)

To reiterate and conclude, we find that the preliminary hearing evidence provided a rational ground for assuming Reid had inflicted *corporal injury* upon Jane by strangulation or suffocation, which resulted in a

18

*traumatic condition* (impeding Jane's ability to breathe normally and/or possibly impeding the circulation of blood to Jane's brain). (See § 273.5 (d).)

### III.

### DISPOSITION

The order of the trial court setting aside (dismissing) count two is reversed. (§ 273.5 (a).) The matter is remanded to the trial court with directions to allow Reid to withdraw his plea to count one. (§ 245 (a)(4).)[10]


                                    MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.

---

[10] An appellate court may "remand the cause to the trial court for such further proceedings as may be just under the circumstances." (§ 1260.)