Filed 12/8/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, | B263026 |
|     Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 4WA22795 and App. Div. No. BR051696) |
| v. | |
| DOUGLAS LEE McGOWAN, | ORDER MODIFYING OPINION |
|     Defendant and Respondent. | [CHANGE IN JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on November 19, 2015, be modified as follows:

1.    In the caption under "THE PEOPLE, Plaintiff and Respondent," delete "Respondent" and replace with "Appellant."

2.    In the caption, under "DOUGLAS LEE McGOWAN, Defendant and Appellant," delete "Appellant" and replace with "Respondent."

3.    On page 1, delete the first paragraph "APPEAL from a judgment of the Appellate Division of the Superior Court of Los Angeles County. Sanjay Kumar, Patti Jo McKay and Barbara R. Johnson, Judges. Reversed." Replace it with:

"APPEAL from an order of the Superior Court of Los Angeles County, Jane A. Godfrey, Judge. Affirmed."

4.      On page 1, under the counsel listing for "Ronald L. Brown, Public Defender, Albert J. Menaster, Head Deputy Public Defender, Stephanie Choi, Deputy Public Defender, for Defendant and Appellant," delete "Appellant" and replace it with: "Respondent."

5.      On page 18, under the heading Disposition, the sentence, "The decision of the appellate division is reversed" is deleted and replaced with: "The order of dismissal is affirmed."

_____
KIRSCHNER, J.*                              MOSK, J.

_____
*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/19/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B263026 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 4WA22795 and App. Div. No. BR051696) |
| v. | |
| DOUGLAS LEE McGOWAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Appellate Division of the Superior Court of Los Angeles County.  Sanjay Kumar, Patti Jo McKay and Barbara R. Johnson, Judges.  Reversed.

Marsha Jones Moutrie, City Attorney, Terry L. White, Chief Deputy City Attorney, Jenna K. Grigsby, Deputy City Attorney, for Plaintiff and Appellant.

Ronald L. Brown, Public Defender, Albert J. Menaster, Head Deputy Public Defender, Stephanie Choi, Deputy Public Defender, for Defendant and Appellant.

_____

Penal Code section 991[1] permits an in-custody defendant to require the arraigning magistrate to determine whether there is probable cause to believe the defendant committed a public offense.  (§ 991, subd. (a).)  If the magistrate finds no such probable cause, the defendant is entitled to dismissal of the complaint.  (§ 991, subd. (d).)  The issue raised in this appeal is whether section 991 vests the trial court with authority to dismiss only some of the charges for lack of probable cause, or whether it must dismiss the complaint in its entirety or not at all.  We conclude that section 991 permits the court to dismiss individual charges from the complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Douglas Lee McGowan was arrested at 1:30 a.m. on May 9, 2014.  At the time, he was wrapped in a blanket and seated underneath the Santa Monica Pier.  He was surrounded by various personal items, including two milk crates.  The People filed a complaint charging him with (1) camping in a prohibited public place (Santa Monica Mun. Code, § 4.08.095, subd. (a)), (2) possession of a milk crate (§ 565), and (3) loitering under the Santa Monica Pier (Santa Monica Mun. Code, § 3.36.100).   The defense filed a motion to dismiss all charges pursuant to section 991.  At argument, the trial court ordered further briefing on whether it had the authority to dismiss only two of the three counts.  It ultimately dismissed counts one and three, finding probable cause to support the charge in count two only, possession of a milk crate.  In a published decision, the Appellate Division of the Superior Court of Los Angeles County reversed, holding that section 991 does not vest the trial court with authority to dismiss anything less than the entire complaint.  We ordered jurisdiction of the matter transferred to this court pursuant to our authority under California Rules of Court, rule 8.1002.

---

[1]      All further statutory references are to the Penal Code, unless otherwise specified.

2

At oral argument, the parties informed the court that the charges against McGowan have been resolved, but that he remained in custody for some time pending resolution, as he was unable to post bond.  Therefore, this matter has been rendered moot.  However, "[w]here questions of general public concern are involved, particularly in the area of the supervision of the administration of criminal justice, we may reject mootness as a bar to a decision on the merits."  (*In re Walters* (1975) 15 Cal.3d 738, 744 (*Walters*); see *In re Fluery* (1967) 67 Cal.2d 600, 601.)

## DISCUSSION

### A.    *Standard of Review and Rules of Statutory Construction*

On appeal, questions of law and statutory interpretation are reviewed de novo.  (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1276.)  "'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.  [Citation.]  We must look to the statute's words and give them their usual and ordinary meaning.  [Citation.]  The statute's plain meaning controls the court's interpretation unless its words are ambiguous.'  [Citation]."  (*People v. Robinson* (2010) 47 Cal.4th 1104, 1138.)  "If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'  [Citation.]  Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'  [Citation.]"  (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212.)

3

*B.*     *Penal Code Section 991*

Section 991 states in part:  "(a) If the defendant is in custody at the time he appears before the magistrate for arraignment and, if the public offense is a misdemeanor to which the defendant has pleaded not guilty, the magistrate, on motion of counsel for the defendant or the defendant, shall determine whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof.  [¶] . . . [¶] . . . (d) If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial.  [¶]  If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant.  [¶]  (e) Within 15 days of the dismissal of a complaint pursuant to this section the prosecution may refile the complaint."

1.     **Plain Meaning**

The People argue that the statute unambiguously authorizes the court to dismiss "the complaint," not individual counts, and not anything short of the entire complaint. We disagree.  The singular term "the complaint" is not defined, and throughout the Penal Code, "the singular number includes the plural, and the plural the singular."  (§ 7.)  The Supreme Court's interpretation of other singular terms — such as "an action" or "the indictment or information" — to permit dismissal of individual counts in related Penal Code provisions is further evidence that section 991's use of the singular term "the complaint" is not unambiguously dispositive.

Section 1385, subdivision (a) permits a trial court to dismiss "an action" in furtherance of justice.  The statute is silent as to the dismissal of individual charges in an action.  Nonetheless, in interpreting this provision, the Supreme Court has stated that "[t]he authority to dismiss the whole includes, of course, the power to dismiss or 'strike out' a part.  [Citation.]"  (*People v. Burke* (1956) 47 Cal.2d 45, 51, disapproved on other

4

grounds in *People v. Sidener* (1962) 58 Cal.2d 645, 647.) To this end, the high court has "consistently interpreted 'action' to mean the 'individual charges and allegations in a criminal action' [citations] . . ." (*In re Varnell* (2003) 30 Cal.4th 1132, 1137; see also *People v. Casper* (2004) 33 Cal.4th 38, 45 ["Because '[t]he authority to dismiss the whole includes, of course, the power to dismiss or "strike out" a part' [citation], the trial court's power under section 1385 to dismiss the entire action necessarily includes the power to dismiss a part of the action"]; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 508 ["we have construed section 1385(a) as permitting a judge to dismiss not only an entire case, but also a part thereof"]; *People v. Campos* (2011) 196 Cal.App.4th 438, 450 ["This power to dismiss [under section 1385] extends to the entire action as well as to individual charges and allegations in the action"].)

Section 1385 is not the only such example. While section 991 controls probable cause determinations in misdemeanor cases, section 995 governs probable cause determinations in felony cases. Like section 991, section 995 employs the singular form and provides that "the indictment or information shall be set aside" if the trial court concludes a defendant was indicted or committed without probable cause. (§ 995, subd. (a).) It, too, has been interpreted to permit the setting aside of a portion of the indictment or information. (See *People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 761, fn. 6 (*Mendella*) ["It is, of course, well settled that a defendant's challenge under section 995 need not be directed to the entire information but may instead attack only portions thereof"], superseded by statute on other grounds as stated in *In re Javon B.* (1993) 6 Cal.4th 801, 814, fn. 8; *People v. Fraijo* (1977) 78 Cal.App.3d 977, 981 [noting that section 995 has been interpreted as permitting the dismissal of a count or counts that are part of a broader information, even though the statute does not expressly authorize setting aside less than the entire information].)

That section 991 deals with in-custody defendants, while sections 995 and 1385 deal with both in-custody and out-of-custody defendants, does not render section 991's words, "the complaint," unambiguous. In fact, the in-custody versus out-of-custody distinction is not relevant to an ambiguity determination. And if the People were correct

5

that the term "the complaint" necessarily and unambiguously means that only an entire complaint may be dismissed, then the long line of cases interpreting sections 995 and 1385 would be wrong.  We decline to reach that conclusion.

Furthermore, "it is well settled that the statutes and codes blend into each other, and are to be regarded as constituting but a single statute . . . .  Accordingly, statutes which are *in pari materia* should be read together and harmonized if possible."  (*People v. Squier* (1993) 15 Cal.App.4th 235, 240.)  As evidenced in the legislative history discussed below, the Legislature intended for sections 991 and 995 to serve analogous purposes (to weed out unsupported charges prior to trial) in the misdemeanor and felony contexts.  We therefore construe the sections harmoniously.

### 2.      Legislative History

Where the statutory language is ambiguous, we look to extrinsic aids such as the legislative history and public policy to inform our interpretation of the statutory language.  (*People v. Sinohui*, *supra*, 28 Cal.4th 205 at p. 212.)  The appellate division assumed section 991 was enacted for the sole purpose of codifying *In re Walters*, *supra*, 15 Cal.3d 738.  In fact, section 991 goes well beyond *Walters*.

Undoubtedly, section 991 was enacted as a partial response to *Walters*, which followed the United States Supreme Court decision in *Gerstein v. Pugh* (1975) 420 U.S. 103 (*Gerstein*).  *Gerstein* held that the Fourth Amendment requires a "timely judicial determination of probable cause as a prerequisite to detention."  (*Id*. at. p. 126.)  This was because pretrial confinement was a significant restraint on liberty and could not be imposed without a judicial determination of probable cause.  (*Id*. at p. 114.)  The court noted that even pretrial release could be accompanied by burdensome conditions that amounted to a significant restraint on liberty.  (*Ibid*.)

Following *Gerstein*, the Supreme Court held in *Walters* that "a judicial determination of probable cause to hold an arrestee for trial on a misdemeanor charge must be made if the arrestee requests that determination, unless pending trial he is

6

released on his own recognizance." (*Walters*, *supra*, 15 Cal.3d at pp. 742-743, fn. omitted.) Based on an analysis of *Walters* and *Gerstein*, the appellate division concluded that section 991's sole purpose was to implement *Gerstein*'s constitutional requirement that a magistrate promptly determine if there is probable cause to believe the defendant committed "a crime" before forcing him or her to await trial while in custody. According to the appellate division, this goal requires the trial court to evaluate the complaint as a whole to determine whether there is probable cause to believe the defendant committed any of the charged crimes.

However, it is also clear the Legislature intended to, and did, go beyond merely parroting and codifying *Walters*. Unlike *Walters*, section 991 (a) requires dismissal of the complaint along with discharge of the defendant if there is no probable cause to believe the defendant committed the misdemeanor, (b) requires the court to set the matter for trial if it determines probable cause exists, (c) provides the prosecution may refile the complaint within 15 days of dismissal, (d) bars further prosecution upon a second dismissal, and (e) requires the court to consider police reports or the record of citizen complaints, but not live witnesses or cross-examination, in determining probable cause. (§ 991, subd. (a).) None of these provisions of section 991 are contemplated by *Walters*.

The legislative history confirms that section 991 was intended to go beyond *Walters*. The provision was enacted October 1, 1980, "to create a means for eliminating groundless misdemeanor complaints before a case goes to trial and to codify . . . *Walters*." (Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 2931 (1979-1980 Reg. Sess.), as amended May 7, 1980, p. 2.) As such, the purpose of section 991 was twofold: (1) to eliminate groundless complaints, and (2) to codify *Walters*.

In fact, the legislative history is replete with evidence that section 991 was intended not only to codify *Walters*, but also to weed out groundless charges. The Assembly Committee on Criminal Justice's bill analysis describes the bill's background and purpose as follows: "Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether there is reasonable cause to believe a felony has been committed by the defendant. *The purpose*

7

*of the preliminary hearing is to weed out groundless or unsupported charges* (Witkin, Ca. Crim. Pro., p. 128). Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial. [¶] . . . [¶] . . . [¶] . . . [¶] . . . [¶] . . . [¶] . . . [¶] . . . 1. *Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges.* Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out." (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2391 (1979-1980 Reg. Sess.), Apr. 21, 1980, pp. 1-2, italics added; see also Assem. Com. on Criminal Justice, Analysis of Bill No. 2391 (1979-1980 Reg. Sess.), Apr. 28, 1980, pp. 1-2 [same]; Sen. Judiciary Com., Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.), July 9, 1980, p. 2 ["Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether there is reasonable cause to believe a felony has been committed by the defendant. The purpose of the preliminary hearing is to weed out groundless or unsupported charges (Witkin, Ca. Crim. Pro., p. 128). Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial. [¶] Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out."]; Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.), as amended July 9, 1980, p. 1 ["Proponents argue that this bill establishes a procedure for the expeditious dismissal of unsupported or frivolous charges. They also argue that, under the present system, people accused of misdemeanors are in custody for as long as 30 days before groundless charges can be ascertained. [¶] Opponents argue that preliminary hearings for misdemeanors are unnecessary given existing procedures for challenging probable

8

cause.  Opponents are also concerned that these hearings would only add to court congestion"].)

These legislative analyses evince the Legislature's desire to create a procedural mechanism to "weed out groundless misdemeanor complaints prior to trial" and to facilitate the "expeditious dismissal of unsupported or frivolous charges."  The legislative history also indicates the Legislature intended that section 991 would serve a function similar to that of felony preliminary hearings, which "is to weed out groundless or unsupported charges."  (See *People v. Plengsangtip* (2007) 148 Cal.App.4th 825, 835 [purpose of a preliminary hearing is to "assure that a person is not detained for a crime that was never committed," and """"to weed out groundless or unsupported charges"""].)

Thus, throughout the legislative history, the probable cause hearing is referred to as "preliminary hearings for misdemeanors."  (See Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1985-1986 Reg. Sess.) as amended July 9, 1980, p. 1.)  The Assembly Committee on Criminal Justice's analysis of the bill is captioned, "SUBJECT: Preliminary Hearing for Misdemeanor Offenses."  (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2391 (1979-1980 Reg. Sess.), Apr. 21, 1980, p. 1; see also Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 2391 (1979-1980 Reg. Sess.), Apr. 28, 1980, p. 1 [same].)  Likewise, the Senate Committee on Judiciary's analysis of the bill is titled, "<u>MISDEMEANORS</u> [¶] -<u>PRELIMINARY HEARINGS</u>-." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2391 (1979-1980 Reg. Sess.), as amended May 7, 1980, p. 1.)

In fact, proponents and opponents of the bill alike recognized that the provision would establish a right to "preliminary hearings" in misdemeanor cases.  (See Los Angeles Municipal Judges' Association, letter to Assemblyman Bill McVittie, Apr. 11, 1980 ["This bill would establish a preliminary hearing for misdemeanors"]; Cal. District Attorney's Association, letter to Assemblyman Elihu M. Harris, July 17, 1980 [noting that the proposed bill "provide[s] an in-custody defendant with [the] right to a preliminary hearing where the charged offense is a misdemeanor"]; Los Angeles County

9

Municipal Court Judges' Association, letter to Sen. Bob Wilson, June 13, 1980 ["This bill would establish a preliminary hearing for misdemeanors"].)

This terminology makes clear that the Legislature contemplated that section 991 probable cause hearings would serve a purpose similar to that of preliminary hearings in felony cases, *i.e.*, "assure that a person is not detained for a crime that was never committed" and "to weed out groundless or unsupported charges." (*People v. Plengsangtip*, supra, 148 Cal.App.4th at p. 835.) Because sections 991 and 995 were meant to serve analogous purposes in the misdemeanor and felony contexts, the rules of statutory construction demand that we harmonize the two provisions whenever possible. (See *People v. Squier* (1993) 15 Cal.App.4th 235, 240-241 ["statutes which are in *pari materia* should be read together and harmonized if possible"].) Thus, in keeping with the Supreme Court's conclusion that section 995 permits the setting aside of individual charges within a felony indictment or information, we conclude that section 991 permits the dismissal of individual charges from a misdemeanor complaint. Certainly, section 991's "weeding out" function would be poorly served if the trial court were required to analyze misdemeanor complaints as a whole, rather than on a per-charge basis.

Contrary to the People's position, there is no evidence in the legislative history that the Legislature ultimately rejected the proponents' position that section 991 would allow trial courts to "weed out" groundless charges. The most recent evidence of the Legislature's dual intent is found in the analyses by the Senate Democratic Caucus and the Senate Republican Caucus. These analyses are dated within two days before the Senate voted on the bill. The Senate Democratic Caucus' analysis states: "Proponents argue that this bill establishes a procedure for the expeditious dismissal of unsupported or frivolous charges." (Sen. Democratic Caucus, Analysis of Assem. Bill No. 2931 (1985-1986 Reg. Sess.), p. 1.) Likewise, the "comments" section of the Senate Republican Caucus' analysis states: "Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the expeditious dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before

10

groundless charges can be weeded out." (Sen. Republican Caucus, analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.), p. 2.)[2] The Enrolled Bill Report was prepared by the Legal Affairs Department of the Governor's Office after the bill passed both the Senate and the Assembly. It confirms that section 991 was meant to be broader than *Walters* in that it requires the dismissal of charges where probable cause is not established. It states: "This bill goes beyond the *Walters'* decision and requires that the charges be dismissed if probable cause is not established, although the prosecution may thereafter refile the complaint within 15 days." (Governor's Office, Enrolled Bill Report on Assem. Bill No. 2391 (1979-1980 Reg. Sess.), Sept. 15, 1980, p. 1.)

This legislative history belies the appellate division's holding that "[t]he statute is not a mechanism to extricate certain unsupportable charges from an otherwise legitimate complaint" but rather "simply an implementation of *Gerstein's* constitutional requirement that a magistrate promptly determine there is probable cause to believe the defendant committed 'a crime' before forcing him or her to await trial while in custody." (*People v. McGowan* (2015) 235 Cal.App.4th Supp. 1, 6.) We disagree with the notion that the legislative documents contain "inaccuracies" that somehow suggest the Legislature did not intend what it said.[3] However, even assuming the legislative history is somehow

---

[2]    In a May 14, 1980 memo to Assemblyman Elihu Harris from Jim Tucker of the ACLU, the ACLU offers its opinion that Assembly Bill 2931 merely codifies *Walters*. However, even this memo notes, in language reminiscent of preliminary hearings, that "[t]he bill . . . [permits] the court to screen out those cases for which there is clearly no evidence to support the charge." (Jim Tucker, ACLU, memo to Assemblyman Elihu Harris, May 14, 1980.)

[3]    The Legislative Counsel's Digest for Assembly Bill 2931 is confusing and provides: "Existing law authorizes the magistrate in misdemeanor cases to ascertain the gravity of the offense committed, in case the defendant may be held to answer for a higher offense. Existing law does not specifically provide for a determination in misdemeanor cases, prior to the filing of an information, of whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof." (Legis. Counsel's Dig., Assem. Bill No. 2931, Mar. 6, 1980.) The first sentence applies to felonies, not misdemeanors. The second sentence juxtaposes the first sentence and is only necessary if the first sentence describes felony procedures. It is

11

incorrect or ambiguous, we would still be required to interpret section 991 as permitting count-by-count dismissals, so as to avoid an absurd consequence.

Taken to its logical conclusion, the appellate division's all-or-nothing decision would result in a situation where a trial court presented with a multi-count complaint determines there is no probable cause for all but one of the charges. Under the appellate division's decision, the defendant would be forced to stand trial on all of the charges, including the ones for which the court has already determined there is no probable cause. Nor is it accurate that the trial court may satisfy its section 991 obligations by examining only one charge in a multi-charge complaint. Section 991, subdivision (d) states in part: "If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial. [¶] If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant." This provision requires the trial court to determine whether probable cause exists for each offense in the complaint. Under the People's position, the trial court may determine that no probable cause exists for one or more of the offenses, but nonetheless set them for trial.[4] When

---

highly unlikely, from a reading of the complete legislative history, that every member of the Legislature voting for passage of Assembly Bill 2931, and every lawyer and judge who submitted comments, did so under the mistaken belief that misdemeanor and felony procedures were somehow conflated or merged because of the Legislative Counsel Digest's comments. Indeed, even the People acknowledge that the errors in the Legislative Counsel Digest are irrelevant in terms of the issue presented.

[4]     The People argue the precise opposite: that it would be absurd to "discharge the defendant" (§ 991, subd. (a)) simply because two of three counts are dismissed. Wherever possible, we harmonize statutory provisions relating to the same subject, in light of the Legislature's overall purpose. (*Industrial Risk Insurers v. Rust Engineering Co.* (1991) 232 Cal.App.3d 1038, 1042.) Given that one of the purposes behind legislative enactment of section 991 was to "weed out groundless misdemeanor complaints prior to trial" and to "permit the expeditious dismissal of unsupported or frivolous charges" (see, e.g., Sen. Judiciary Com., Analysis of Assem. Bill No. 2931 (1979-1980 Reg. Sess.), July 9, 1980, p. 2), we believe subdivision (d) of section 991

12

construing statutes, we select the statutory construction that "avoid[s] an interpretation that would lead to absurd consequences." (*People v. Sinohui*, *supra*, 28 Cal.4th 205, at p. 212.) In the words of *Walters*, "We elect not to approve a procedure for determining compliance with a constitutional mandate when that procedure is vulnerable to attack on grounds which suggest the possibility of a type of star-chamber determination, particularly when the alternative poses little additional burden on the administration of justice." (*Walters*, *supra*, 15 Cal.3d at p. 749.)

We agree with the defense that the section must be interpreted to permit the trial courts to dismiss not only an entire complaint, but also individual charges within the complaint, if it finds the charges are not supported by probable cause.

### 3.    Public Policy

Many of the public policy objectives that underpin section 995 also support a reading of section 991 that permits trial courts to dismiss individual charges from a complaint. The Supreme Court has stated that preliminary hearings and section 995 motions "operate as a judicial check on the exercise of prosecutorial discretion" and help ensure that the defendant is not charged excessively. (*Mendella, supra,* 33 Cal.3d at p. 759.) Not only do excessive and unfounded charges confer a "tactical advantage . . . upon the prosecutor in respect to plea bargaining," they also subject defendants to prejudicial introduction of "evidence concerning allegations that should have been 'weeded out'" in pretrial proceedings. (*Id.* at pp. 760-761.)

These policy considerations apply equally in the misdemeanor context. We do not suggest that prosecutors regularly and inappropriately overcharge misdemeanor defendants. "A prosecutor abides by elementary standards of fair play and decency by refusing to seek indictments until he or she is completely satisfied the defendant should

---

must be interpreted to mean that a defendant is discharged only "[i]f the court determines that no such probable cause exists [for each offense]."

13

be prosecuted and the office of the prosecutor will be able to promptly establish guilt beyond a reasonable doubt. [Citations.]" (*People v. Nelson* (2008) 43 Cal.4th 1242, 1256.)

However, for reasons of fundamental fairness, we interpret rules so as to discourage, rather than encourage, abuses of prosecutorial discretion. (See, e.g., *People v. Spicer* (2015) 235 Cal.App.4th 1359, 1377 [interpreting rule so as not to encourage overcharging by prosecutors].) Permitting the trial court to "weed out" unfounded misdemeanor charges in response to a section 991 motion helps preserve fairness in the plea bargaining process, by ensuring that custodial, misdemeanor defendants do not bargain under a cloud of unfounded charges. (See *Mendella, supra*, 33 Cal.3d at p. 760 [noting that unfounded allegations "may constitute powerful bargaining tools for the prosecutor" and cause the defendant to "remain under the threat of a long sentence during the entire plea negotiation process"].) Undoubtedly, fairness in plea bargaining is equally important in cases involving custodial and non-custodial defendants. However, custodial defendants are especially vulnerable in the plea bargaining process, as they are more likely to seek and accept a plea bargain as a means of escaping confinement.

Similarly, the dismissal of unfounded charges ensures that bail is appropriately set. Bail is fixed according to the charges alleged, so the dismissal of some charges may justify reduced bail or release on a defendant's own recognizance. For example, a single complaint may charge a defendant with misdemeanors and an infraction. If a magistrate finds no probable cause for the misdemeanors, the only charge remaining would be an infraction, for which no jail time may be imposed. (§ 19.6 ["An infraction is not punishable by imprisonment"].) In that case, pretrial confinement is assuredly not justified in the vast majority of cases. Yet, the defendant in this scenario would remain in jail pending trial if the People were correct that all charges against a defendant must stand unless there is no probable cause to support any of the counts.

As with felony charges, dismissal of unfounded misdemeanor charges also protects custodial defendants from the introduction of prejudicial or time-consuming evidence at trial, when that evidence is relevant only to charges that should have been

14

"weeded out" in pretrial proceedings. (See *Mendella*, *supra*, 33 Cal.3d at pp. 760-761.) It also promotes judicial economy, allowing courts to avoid trials on unfounded charges.

In the event of a dismissal under section 991, the prosecution is permitted to refile the complaint within 15 days of dismissal. (§ 991, subd. (e).) Nonetheless, the People argue that they could be foreclosed from refiling misdemeanor charges dismissed on a count-by-count basis. They point out that, following dismissal of some of the charges, a defendant may plead guilty to the remaining charges even without the prosecutor's consent. (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1230 (*Jurado*).) The People argue that a defendant's decision to plead guilty to the remaining charges may trigger the "multiple prosecution" bar set forth in *Kellett v. Superior Court of Sacramento County* (1966) 63 Cal.2d 822 (*Kellett*). *Kellett*, according to the People, could prevent the prosecution from refiling the dismissed charges. *Kellett* is based on sections 654 and 954 and holds that "[w]hen . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id.* at p. 827, fn. omitted.) We are not persuaded by the People's reasoning.

First, we note that the People have cited no cases where *Kellett* has been applied to bar the refiling of a charge dismissed pursuant to sections 991 or 995, and we have found no such cases. To the contrary, in *People v. Carter* (2005) 36 Cal.4th 1215, the Supreme Court held that section 654 does not bar the defendant's trial on charges that were dismissed from an earlier complaint, even though the defendant was subsequently tried and convicted on the remaining charges in that complaint. (*Id.* at pp. 1238-1240; see also *Jurado*, *supra*, 4 Cal.App.4th at pp. 1230-1231 [defendant who pled guilty to murder without prosecutor's consent after section 995 dismissal of lying-in-wait special circumstance allegation could later be retried on the special circumstance]; 3 Witkin and Epstein, California Criminal Law (4th ed. 2012) §§ 261, 262, pp. 416-417 [discussing the

15

multiple prosecution rule, and distinguishing retrials on individual counts dismissed from a complaint, even after the defendant is convicted of the remaining charges].)

Section 1004 presents a situation analogous to that discussed here. That section permits a defendant to demur "to the accusatory pleading" on the grounds that the facts stated do not constitute "a public offense" or that the court lacks jurisdiction over "the offense charged." (§ 1004, subds. (1) & (4).) If the demurrer is sustained and it appears the defects may be cured, the court may permit the filing of an amended complaint within 10 days. (§ 1007.) We can find no authority stating that *Kellett* bars the filing of the amended complaint if the defendant pleads to the remaining charges in the interim.

Nor do we believe that *Kellett* should apply in the scenario posed by the People. The bar against successive prosecutions, as set forth in *Kellett*, exists to prevent prosecutorial harassment of defendants. (See *Kellett*, *supra*, 63 Cal.2d at pp. 825-826 ["It would constitute wholly unreasonable harassment . . . to permit trials seriatim until the prosecutor is satisfied with the punishment imposed"].) It does not apply when a defendant deliberately brings himself within the rule's ambit through an act of "connivance and concealment." (See *People v. Hartfield* (1970) 11 Cal.App.3d 1073, 1081-1082 (*Hartfiled*) [defendant not allowed to claim the benefit of the multiple prosecution rule where he pled guilty to the misdemeanor charge of reckless driving in municipal court and advanced the date of the pronouncement of judgment so that judgment would be entered just before his scheduled trial on related felony charges in superior court].) A defendant who pleads guilty in a bid to foreclose refiling and prosecution of charges dismissed under section 991 does so out of "connivance" and will not be permitted to claim the benefit of a rule designed to prevent harassment of defendants by the government. (See *Hartfield*, 11 Cal.App.3d at p. 1081 ["[I]n the case at bench the operative fact (pronouncement of judgment) giving rise to defendant's claim of harassment from double prosecution as prohibited by Penal Code, section 654 was procured by defendant himself by connivance and concealment, and he may not claim the benefit of the statute"].)

16

Moreover, even if the People were correct that *Kellett* could be invoked to bar the refiling of a charge dismissed pursuant to section 991, we believe the scenario is one that will occur in limited circumstances only and is unlikely to result in significant prejudice. The *Kellett* rule "is designed to cover prosecutions for offenses arising out of the same act." (*People v. Douglas* (1966) 246 Cal.App.2d 594, 599.) In *Kellett, supra,* 63 Cal.2d at p. 824, the Supreme Court held that the charges of exhibiting a firearm in a threatening manner and possession of a concealable weapon by a felon could not be separately prosecuted where they arose from the single act of brandishing a pistol. By contrast, the rule has been held inapplicable in cases where the offenses arise from separate acts or conduct, even when they occurred in the same location at the same time. (See, e.g., *People v. Martin* (1980) 111 Cal.App.3d 973, 978 [separate prosecutions for burglary and possession of a sawed-off shotgun permitted where the defendant stole the shotgun during the burglary]; *People v. Hurtado* (1977) 67 Cal.App.3d 633, 637 [defendant may be separately prosecuted for drunk driving and possession of heroin where he was found trying to hide a package of heroin between his legs when stopped for drunk driving]; *People v. Ward* (1973) 30 Cal.App.3d 130, 136 [defendant who pled guilty to oral copulation was subject to second prosecution for rape, kidnapping, and assault; "[t]he mere fact that they occurred in defendant's vehicle during the same night does not connect them as parts of a continuous course of conduct"].)

Therefore, even if *Kellett* could be read as barring prosecution on the dismissed charges in the event a defendant pleads guilty following a count-by-count dismissal, the bar would not apply unless the charges arise from the same act or conduct. If they arise from the same act or conduct, then section 654 would have prohibited double punishment in any event. In setting forth the multiple prosecution rule, the *Kellett* court noted that section 654 necessarily creates a risk that defendants may escape proper punishment as a result of a conviction of a lesser offense. (*Kellett*, 63 Cal.2d at p. 828; see, e.g., *Barriga v. Superior Court* (2012) 206 Cal.App.4th 739, 746 [defendant who pled guilty to resisting peace officer in exchange for dismissal of related charge of unlawfully driving or taking vehicle could not be subsequently prosecuted for carjacking].) "Accordingly, to

17

avoid these risks it has always been necessary for prosecutors carefully to assess the seriousness of a defendant's criminal conduct before determining what charges should be prosecuted against him." (*Kellett, supra,* at p. 828.) It is equally necessary that prosecutors carefully assess the nature of the evidence and the charges supported by that evidence. We conclude, as the Supreme Court did in *Kellett*, that "[b]y emphasizing the importance of such assessment, our holding herein will not open the door to the escape of defendants from punishment for serious crimes because of convictions or acquittals of closely related minor crimes. It should tend instead to reduce the risk that they may escape such punishment by invoking the double jeopardy doctrine or the bar of section 654." (*Id.* at pp. 828-829.)

## DISPOSITION

The decision of the appellate division is reversed.
CERTIFIED FOR PUBLICATION

KIRSCHNER, J. *

I concur:

MOSK, J.

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

People v. Douglas Lee McGowan
B263026

TURNER, P.J., Dissenting


# I.  INTRODUCTION


I respectfully dissent from the order upholding the dismissal of counts 2 and 3 of the misdemeanor complaint.  In my view, the plain language of Penal Code[1] section 991, subdivision (d) does not permit the dismissal of individual counts.  Language permitting the dismissal of individual counts appears nowhere in section 991.  But if the language of section 991 is ambiguous and resort to extraneous documents is proper, there is no evidence the Legislature intended that individual counts be dismissed.  Some of the language in legislative documents is incorrect or irrelevant.  But the other legislative evidence is solely consistent with the view of then Governor Edmund Brown Jr. as to why section 991 was enacted.  Governor Brown believed the purpose of the section 991 was to implement the due process right of an in custody misdemeanor defendant to a pre-trial probable cause determination.  (*Gerstein v. Pugh* (1975) 420 U.S. 103, 111-119 (*Gerstein*); *In re Walters* (1975) 15 Cal.3d 738, 747-754 (*Walters*).)  So do I.


# II.  STANDARDS OF REVIEW


Because this case involves an issue of a statutory interpretation applied to undisputed facts, we exercise independent review.  (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562; *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1480.)  Our Supreme Court has explained:  "When construing a statute, we look first to its words, '"because they generally provide the most reliable indicator of legislative intent." [Citation.]  We give the words their usual and ordinary meaning [citation], while construing them in light of

---

[1]     Future statutory references are to the Penal Code.

1

the statute as a whole and the statute's purpose [citation].' (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529-530.)" (Accord, *In re Ethan C.* (2012) 54 Cal.4th 610, 627; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) According to our Supreme Court: "'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc., supra,* 51 Cal.4th at p. 530; see *In re Ethan C., supra,* 54 Cal.4th at p. 627.) As I will explain, this is the controlling rule of interpretative law.

In any event, if (but only if) the statutory language is ambiguous, then it is appropriate to review extraneous historical materials which assist in determining what the Legislature intended. Our Supreme Court has explained the nature of such evidence that may be reviewed: "If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. (*Olson v. Automobile Club of Southern California* [ (2008) ] 42 Cal.4th [1142,] 1147.) 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*[ (1987) ] 43 Cal.3d [1379,] 1387.)" (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.) In my view, the weight of the historical materials is that individual counts, as distinguished from the complaint's entirety, may not be dismissed. (§ 991, subd. (d) ["dismiss the complaint."].)

## III. PLAIN LANGUAGE ANALYSIS

In my view, the plain language of section 991 is controlling without reference to any legislative intent materials. Nothing in the language of section 991 allows for the dismissal of individual counts. I agree with the following analysis in the appellate division opinion: "Section 991 expressly refers to the dismissal of the complaint: 'If the

2

court determines that no such probable cause exists, it shall *dismiss the complaint* and discharge the defendant.' (§ 991, subd. (d), italics added.) The statute further provides for the refiling of a complaint after a motion to dismiss is granted under section 991: 'Within 15 days of the dismissal of *a complaint* pursuant to this section the prosecution may refile *the complaint*.' (§ 991, subd. (e), italics added.) There is no language authorizing either the dismissal of charges independent of the complaint, or the refiling of a charge that was previously dismissed from a complaint that otherwise survived a section 991 motion. The statute consistently references 'the complaint,' not independent charges within the complaint." This analysis is controlling and dispenses with the need to review legislative intent materials. (*Pineda v. Williams-Sonoma Stores, Inc., supra,* 51 Cal.4th at p. 530; see *In re Ethan C., supra,* 54 Cal.4th at p. 627.)

## IV.  STATUTORY CONSTRUCTION ANALYSIS

### A.  Introduction

In my view, the weight of the evidence demonstrates that the Legislature did not intend to provide for the dismissal of individual counts without dismissing the entire complaint. Further, unlike the parties, I believe some of the language in one Senate caucus report and in every version of the Legislative Counsel's Digest is just plain wrong. Those errors are irrelevant though in terms of the issue before us. When the totality of the evidence on the subject is assessed, I conclude the Legislature never intended to permit dismissal of individual counts without dismissal of the entire complaint. No committee report, analysis or letter by an interested party directly or inferentially states the language in section 991, subdivision (d) ("dismiss the complaint") permits dismissal of individual counts.

3

## B. Incorrect Analysis

The legislative intent materials contain an inaccuracy. Every version of the Legislative Counsel's Digest for Assembly Bill No. 2931 (1979-1980 Reg. Sess.) (Assembly Bill No. 2931) contains the following incorrect analysis: "Existing law authorizes the magistrate in misdemeanor cases to ascertain the gravity of the offense committed, in case the defendant may be held to answer for a higher offense. Existing law does not specifically provide for a determination in misdemeanor cases, prior to the filing of an information, of whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof. [¶] This bill would provide procedures for such a determination that the magistrate at the time of arraignment. . . ." (Legis. Counsel's Dig., Assembly Bill No. 2931, Mar. 6, 1980; Legis. Counsel's Dig., Assembly Bill No. 2931, as amended in Assembly, May 7, 1980; Legis. Counsel's Dig., Assembly Bill No. 2931, Legis. Counsel's Dig., Assembly Bill No. 2931, 4 Stats. p. 470.) As can be noted, the Legislative Counsel's Digest conflates the use of an information which applies only in felony cases to misdemeanor litigation. This is extraordinarily unusual because information provided in Legislative Counsel's Office reports typically correctly discusses matters of criminal procedure. In my more than a quarter century with the Court of Appeal, I have never seen an error of this magnitude in any Legislative Counsel's Office report or digest. Such is a testament to that office's historic integrity and competence. The same erroneous analysis appears in a report prepared by the Senate Democratic Caucus in connection with Assembly Bill No. 2931 as amended July 9, 1980. (Rep. prepared for Senate Democratic Caucus on Assem. Bill No. 2931 as amended Jul. 9, 1980, Jul. 10, 1980, p. 1.)

4

C.  Evidence Consistent with the Analysis that Section 991 Provides a Trial Court with the Authority to Dismiss a Complaint But Not Individual Counts

1.  The decisional authority concerning the custody of misdemeanor defendants preceding introduction of Assembly Bill No. 2391

Two decisions preceded and motivated the introduction of Assembly Bill No. 2391.  The first decision was *Gerstein, supra,* at pages 106-125, a federal civil rights action which discusses the extent of Fourth Amendment rights of detained arrestees. *Gerstein* held, "[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." (*Id*. at p. 114; see *Michigan v. Duran* (1978) 439 U.S. 282, 285, fn. 3.)  *Gerstein* further held:  "[A state] must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."  (*Id*. at pp. 124-125; see *Baker v. McCollan* (1979) 443 U.S. 137, 142-143.)  *Gerstein* allowed the states flexibility and the option of experimenting in devising post-arrest probable cause-determination hearing procedures.  (*Gerstein, supra,* 443 U.S. at p. 123; see *County of Riverside v. McLaughlin* (1991) 500 U.S. 44, 54.)

The second decision was *Walters, supra,* 15 Cal.3d at pages 747-753.  In *Walters*, our Supreme Court evaluated this state's misdemeanor pretrial procedures for compliance with the *Gerstein* probable cause determination requirements.  Our Supreme Court held, "In light of the recent United States Supreme Court decision in *Gerstein*[*, supra,*], we agree with petitioner and hold that a judicial determination of probable cause to hold an arrestee for trial on a misdemeanor charge must be made if the arrestee requests that determination, unless pending trial he is released on his own recognizance."  (*Walters, supra,* 15 Cal.3d at p. 743, fn. omitted; see *In re Golden* (1977) 65 Cal.App.3d 789, 795.) *Walters* described the issue decided in *Gerstein*:  "If the judicial officer finds that probable cause has not been established, the defendant must be discharged from custody.

5

However, prosecution of the offense is not precluded thereafter since additional evidence may be obtained by the time of trial. In any event, an unlawful arrest is not a bar to trial. (See *People v. Bradford* (1969) 70 Cal.2d 333, 344-345.) *Gerstein* is concerned only with probable cause for pretrial detention and does not purport to hold that the absence of probable cause for detention bars further prosecution of the case. (*Gerstein*[, *supra*, 420 U.S.] at pp. 124-125, fn. 26.)" (*Walters*, *supra*, 15 Cal.3d at p. 753.) As will be noted, legislative committee and other documents explain that the purpose of Assembly Bill No. 2931 was to codify *Walters*. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931 as amended May 7, 1980 ["The purpose of this bill is to create a means for eliminating groundless misdemeanor complaints before a case goes to trial and to codify In re Walters."]; Governor Edmund Brown Jr., Letter to Assemblymembers on Assem. Bill No. 2931 as enacted ["[T]he bill also contains an unrelated provision which attempts to codify the courts' ruling in In re Walters (1975) 15 Cal.3d 738."].)

2. Legislative history documents

When originally introduced, Assembly Bill No. 2931 applied to misdemeanor defendants even if they were out of custody. (Assem. Bill No. 2931, as introduced Mar. 6, 1980.) On April 10, 1980, prior to the scheduled Assembly Committee on Criminal Justice hearing, Steve White of the California District Attorneys Association wrote to Assemblymember Elihu Harris. (Assemblymember Harris was the author of Assembly Bill No. 2931.) Mr. White explained that "current decisional law," in obvious reference to *Gerstein* and *Walters*, required a probable cause determination only in the case of detained defendants. (Letter of Steve White to Assemblymember Harris concerning Assem. Bill No. 2931 as introduced, Apr. 10, 1980, p. 1.) After the initial hearing before the criminal justice committee, Assembly Bill No. 2931 was amended to apply only to detained misdemeanor defendants. In his April 10, 1980 letter, Mr. White never expressed any belief about individual counts being dismissed if Assembly Bill No. 2931 was enacted. (As will be noted, neither did any other person who wrote the Legislature.)

6

Two reports prepared for an April 28, 1980 hearing before the Assembly Committee on Criminal Justice describe how Assembly Bill No. 2931 established a procedure for determining probable cause in misdemeanor cases. At the conclusion of the description of the bill, both committee reports state, utilizing the same language: "4. If the court determines that there is probable cause to believe that the defendant committed the misdemeanor it shall set the matter for trial. [¶] 5. *If the court determines that there is no probable cause it shall dismiss the complaint*." (Assem. Com. on Criminal Justice (Assem. Bill No. 2391 as introduced) Apr. 28, 1980, p. 1; Assem. Com. on Criminal Justice (Assem. Bill No. 2391 as introduced) Apr. 21, 1980, p. 1, italics added.)

In a similar vein, the Assembly third reading report states: "This bill establishes a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of counsel. Specifically, the bill: [¶] 1) Requires the court to determine the probable cause issue immediately, or for good cause continue the hearing for up to three days; [¶] 2) Requires the court, in determining probable cause, to consider any warrant or supportive affidavits, the sworn complaint or other documents of similar reliability; and [¶] 3) Requires the court to set the matter for trial if probable cause exits, *or else dismiss the complaint*." (Assem. Office of Research, 3rd reading rep. (Assem. Bill No. 2391 as amended May 7, 1980) May 12, 1980, p. 1, italics added.)

In preparation for final Assembly action, James Tucker, the lobbyist for the American Civil Liberties Union California Legislative Office, prepared a floor statement for use by Assemblymember Harris. (Memorandum by James Tucker concerning Assem. Bill No. 2931 to the Assemblymember Elihu Harris, May 14, 1980 (hereafter Tucker memorandum).) To begin with, Mr. Tucker explained that Assembly Bill No. 2391 was a codification of the *Walters* decision: "[Assembly Bill No. 2391] is merely a codification of a 1975 Supreme Court decision by Mr. Chief Justice Wright (In re Walters) which held that where a person is arrested on a misdemeanor charge and he is in custody at the time of his arraignment he is entitled to have the judge review the facts of the complaint to

7

determine if there is probable cause to believe an offense was committed by the defendant. If the court finds that there is no probable cause then the judge must release the defendant pending a trial or other hearing on the case." (Tucker memorandum, p. 1.) Mr. Tucker explained that Assembly Bill No. 2391 clarified the *Walters* decision by specifying the types of evidence the trial court may consider in making a probable cause determination. (Tucker memorandum, p. 1.)

At another point, Mr. Tucker's memorandum to Assemblymember Harris states: "The other aspect of the bill . . . is that it permits the court to dismiss the case if it determines that there is no probable cause, but it permits the prosecutor to refile the case a second time if he disagrees with the action of the court or he is able to come up with additional evidence. Thus, the bill fully protects the ability of the prosecutor to prosecute legitimate cases while still permitting the court to screen out those cases for which there is clearly no evidence to support the charge. This will help the Municipal Courts eliminate those cases from its calendar which should not be in the court system." (Tucker memorandum, p. 2.) Nothing in Mr. Tucker's memorandum describing Assembly Bill No. 2391 and the *Walters* decision prepared for Assemblymember Harris's use on the Assembly floor refers to the dismissal of individual counts.

Once it passed the lower house, Assembly Bill No. 2391 was referred to the Senate Committee on Judiciary on May 21, 1980. (Assem. Final History, Assem. Bill No. 2931, p. 1684.) The Senate judiciary committee hearing on Assembly Bill No. 2391 was completed on July 8, 1980. (*Ibid.*) The report prepared for the Senate judiciary committee hearing concluded on July 8, 1980, specifies as the key issue, "SHOULD THERE BE A PROCEDURE FOR DETERMINING PROBABLE CAUSE IN MISDEMEANOR CASES AS PRESCRIBED BY THE U.S. AND CALIFORNIA SUPREME COURTS?" (Sen. Committee on Judiciary, *op. cit.*, p. 1.) The Senate judiciary committee report identifies as the purpose of Assembly Bill No. 2391: "Under existing law a person accused of a felony has a right to a hearing in order to determine whether probable cause exists to believe that she or he has committed the offense. However, existing law contains no provision for such a hearing when a person has been

8

charged with a misdemeanor, though a judicial determination of probable cause when the defendant in custody was required by the U.S. Supreme Court in <u>Gerstein v. Pugh</u> (1975) and the California Supreme Court in <u>In re Walters</u> (1975). [¶] This bill would establish a procedure for determining probable cause in misdemeanor cases where the defendant is in custody and would provide that two dismissals for lack of probable cause is a bar to further prosecution. [¶] The purpose of this bill is to create a means for eliminating *groundless misdemeanor complaints* before a case goes to trial and to codify <u>In re Walters</u>." (Sen. Committee on Judiciary, *op. cit.*, pp. 1-2, italics added.)

The Senate judiciary committee report then synthesizes the holding of *Walters*, *supra*: "In the case of <u>In re Walters</u> (1975) 15 Cal.3d 738, the California Supreme Court held unanimously that, unless waived, a judicial determination of probable cause is required in every case in which a defendant charged with a misdemeanor is detained awaiting trial. <u>In re Walters</u> was in turn based on the U.S. Supreme Court decision in <u>Gerstein v. Pugh</u> (1975) 420 U.S.103, which required such a probable cause determination, but which afforded the states wide latitude in fulfilling the requirement." (Sen. Committee on Judiciary, *op. cit.*, p. 2.)

The Senate judiciary committee report then expressly identifies the relationship between the *Walters* opinion and Assembly Bill No. 2391: "The structure of the pretrial probable cause determination set forth in <u>In re Walters</u> is similar to that in [Assembly Bill No.] 2931 [¶] (a) <u>Arraignment</u> is the most appropriate stage at which to make a judicial determination of probable cause that the defendant is being properly detained. However, the parties may stipulate to a later determination or the court may, for good cause, continue the determination on defendant's motion. [¶] (b) <u>Use of complaint</u>: When a defendant is arrested pursuant to a warrant, probable cause may be based solely upon examination of the complaint, arrest warrant, and supporting affidavit. If the defendant is arrested without a warrant, the judge may make her or his determination upon a sworn complaint that incorporates by reference other factual materials supporting probable cause. Probable cause may also be proved by a sworn complaint that, without reference to other materials, fully explicates the factual basis of the crime charged. [¶] (c)

9

Testimonial evidence: In re Walters would also permit the prosecution to utilize testimonial evidence on the issue of probable cause in the presence of the defendant and her or his attorney if relevant documentation did not support continued detention." (Sen. Committee on Judiciary, *op. cit.*, pp. 2-3.)

The Senate judiciary committee report describes the probable cause hearing as follows: "2. Preliminary hearing procedure [¶] Under this bill the probable cause hearing would take place as follows: [¶] (a) If a defendant was in custody and had pleaded not guilty, the magistrate, on motion of either counsel or the defendant, would at the time of arraignment determine whether probable cause existed to believe that the *defendant was guilty of a public offense*. [¶] (b) The court would determine probable cause immediately, or, upon a good cause showing, could grant a continuance, not to exceed three days. [¶] (c) In determining probable cause, the court could consider any arrest warrant and supporting affidavits, the sworn complaint, and other similarly reliable documents. [¶] (d) If the court determined that probable cause existed, the case would be set for trial. [¶] (e) If the court determined that probable cause did not exist, the *complaint would be dismissed and the defendant discharged*." (Sen. Committee on Judiciary, *op. cit.*, pp. 3-4, italics added.)

After the July 8, 1980 Senate hearing, Assembly Bill No. 2391 was amended to add what is now section 1043.5.**2** (Assem. Bill No. 2931, as amended in the Senate, Jul.

---

2 Section 1043.5 states: "(a) Except as otherwise provided in this section, the defendant in a preliminary hearing shall be personally present. [¶] (b) The absence of the defendant in a preliminary hearing after the hearing has commenced in his presence shall not prevent continuing the hearing to, and including, holding to answer, filing an information, or discharging the defendant in any of the following cases: [¶] (1) Any case in which the defendant, after he has been warned by the judge that he will be removed if he continued his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the hearing cannot be carried on with him in the courtroom. [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent. [¶] (c) Any defendant who is absent from a preliminary hearing pursuant to paragraph (1) of subdivision (b) may reclaim his right to be present at the hearing as soon as he is willing to conduct himself consistently with the decorum and respect inherent in the concept of

10

9, 1980, pp. 1-3.)  A report prepared for Senate consideration of the July 9, 1980 amendment, describes the probable cause hearing portion of Assembly Bill No. 2391: "This bill would establish a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of [counsel].  Specifically, the bill would: [¶  1)  Require the court to determine the probable cause issue immediately, or for good cause continue the hearing for up to three days;  [¶]  2)  Require the court, in determining probable cause, to consider any warrant or supporting affidavits, the sworn complaint and other documents of similar reliability; and  [¶]  3)  Require the court to set the matter for trial if probable cause exists, *or else dismiss the complaint*."  (Sen. third reading report on Assem. Bill No. 2931 as amended July 9, 1980 prepared for Senate floor vote, May 19, 1980, p. 1, italics added.)

After the Senate amendments were adopted, Assembly Bill No. 2391 returned to the lower house for further action.  While the legislation was awaiting concurrence in the Senate amendments, Mr. White, on behalf of the district attorneys association, weighed in again with concerns about Assembly Bill No. 2391.  Mr. White was concerned because the legislation went beyond the *Walters* decision in one respect.  Assembly Bill No. 2391 required dismissal of the complaint in addition to the defendant's release.  On July 17, 1980, Mr. White wrote:  "We believe your proposal is an attempt to codify a 1975 California Supreme Court decision, In re Walters, 15 Cal.3d 738, in which it was held that a judicial determination of probable cause must take place for the continued detention of a person charged with a misdemeanor.  The court further held that if there is no probable cause, the defendant must be discharged from custody.  The rationale for this decision was an accommodation between an individual's right to liberty and the State's duty to control crime.  The probable cause determination became a condition for any significant pretrial restraint of liberty.  [¶]  Your proposal does provide an in-custody defendant with his right to a preliminary hearing where the charged offense is a

courts and judicial proceedings.  [¶]  (d)  Subdivisions (a) and (b) shall not limit the right of a defendant to waive his right to be present in accordance with Section 977."

11

misdemeanor. However, because the bill would additionally mandate a dismissal of the case, along with a discharge of the defendant, if there is no probable cause to believe the defendant committed the misdemeanor, it goes beyond In re Walters." (Letter of Steve White, California District Attorneys Association to Assemblymember Harris re Assem. Bill No. 2931 as amended May 7, 1980, Jul. 17, 1980, p. 1.) Mr. White then requested that Assembly Bill No. 2931 be amended to provide for an accused's release on her or his own recognizance rather than dismissal and the defendant's discharge. (*Ibid.*)

The unfinished business report prepared for the Assembly digested the bill as passed by the Assembly: "As passed by the Assembly, this bill established a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of counsel. Specifically, the bill: [¶] 1) Required the court to determine the probable cause issue immediately, or for good cause continue the hearing for *up* to three days; [¶] 2) Required the court, in determining probable cause, to consider any warrant or supporting affidavits, the sworn complaint and other documents of similar reliability; and [¶] 3) Required the court to set the matter for trial if probable cause exists, *or else dismiss the complaint*." (Assem. Office of Research, unfinished business rep. prepared for Assem. Bill No. 2391 as amended July 9, 1980, concurrence in Senate amendments, August 19, 1980, p. 1, italics added.) No reference in the Assembly unfinished business report prepared after Senate action is made to dismissal of individual counts.

Once legislative action was completed, Assembly Bill No. 2391 was sent to Governor Brown for review. As noted, Assembly Bill No. 2391 enacted sections 991 and 1043. The enrolled bill report prepared by the then Legal Affairs Adviser Anthony J. Kline discusses the legislation's purpose and effect: "This bill makes two separate changes in criminal procedures in municipal court. [¶] . . . Case law currently provides that if a person charged with a misdemeanor is not released on bail or his own recognizance prior to arraignment, upon request, the court must hold a probable cause hearing. If it does not find probable cause, the defendant must be released pending trial. (In re Walters (1975) 15 Cal.3d 738.) [¶] This bill goes beyond the Walters' decision

12

and requires that the charges be dismissed if probable cause is not established, although the prosecution may thereafter refile the complaint within 15 days. [¶] This provision of the bill is opposed by both district attorneys and judges who believe it will only result in more court work and delays. They also question whether this provision is truly in the defendant's best interest, since if charges are in fact refiled he will be rearrested and probably have to post bail again." Mr. Kline's enrolled bill report concludes that although "this provision is bad law," its application would be limited to cases: of in-custody defendants; where the accused requests a hearing; and where the court finds "there is no probable cause." Mr. Kline also discusses prosecutors' support for section 1043.5 which allows a preliminary hearing to continue if the accused absconds. Mr. Kline recommended Assembly Bill No. 2931 be permitted to become law without the Governor's signature with an appropriate gubernatorial message. Mr. Kline's analysis reflects consideration of the views expressed by the various stakeholders during the legislative process. Nothing in Mr. Kline's enrolled bill report states that Assembly Bill No. 2391 will permit the dismissal of individual counts.

Governor Brown did not sign Assembly Bill No. 2391. Rather, he allowed Assembly Bill No. 2391 to become law without his signature. In his September 30, 1980 letter to the Assembly, Governor Brown explained section 1043.5 provided needed procedures to control disruptive defendants during a preliminary hearings.[3] However, the second paragraph of Governor Brown's letter explains that another purpose of Assembly Bill No. 2391, the enactment of section 991, was to codify the *Walters* decision: "However, the bill also contains an unrelated provision which attempts to codify the

---

[3] The first paragraph of Governor Brown's letter to the Assembly states: "I am allowing Assembly Bill [No.] 2391 to become law without my signature because it provides needed changes which will prevent criminal defendants from disrupting or frustrating court procedures. In view of the longer and more complex preliminary hearings resulting from the recent decision in Hawkins v. Superior Court (1978) 22 Cal.3d 584, prosecutors believe this protective legislation is necessary." (Letter of Governor Edmund Brown Jr. to the Assembly concerning Assem. Bill No. 2391, Sept. 30, 1980, p. 1.)

court's ruling in In re Walters (1975) 15 Cal.3d 738. This portion of the bill may result in additional court proceedings and subject defendants to repeated arrests; is bad law and should be corrected by the Legislature next session." (Letter of Governor Edmund Brown Jr., *op. cit.*) As noted previously, Governor Brown stated that the legislative purpose in enacting section 991 was to codify the *Walters* decision. And, nothing in Governor Brown's letter indicates, from his perspective, that the Legislature intended to allow for the dismissal of individual counts. Rather, the obvious focus is on the dismissal of a complaint with the ensuing release of the accused to be followed by the filing of an amended misdemeanor complaint.

Finally, various parties presented letters of support or opposition to Assembly Bill No. 2931. None of those letters assert Assembly Bill No. 2931 permits the dismissal of individual counts as distinguished from the entire complaint. (Michael L. Pinkerton, Cal. Attorneys for Criminal Justice, letter to Governor Brown on Assem. Bill No. 2931, Sept. 17, 1980, p. 1 ["This bill is needed to eliminate frivolous misdemeanor complaints at an early stage. . . ."]; Letter of Steve White, *op. cit.*, Jul. 17, 1980, p. 1 ; J. Michael Byrne, Executive Committee of Criminal Justice Section, Los Angeles County Bar Association, letter to Assem. Speaker Leo T. McCarthy on Assem. Bill No. 2931, Sept. 17, 1980, p. 1 [letter of opposition]; Judge Brian D. Crahan, Los Angeles County Municipal Court Judges' Association, letter to Sen. Bob Wilson on Assem. Bill No. 2931 as amended May 7, 1980, Jul. 13, 1980 [letter of opposition]; Maureen P. Higgins, Deputy Attorney General, letter to Assemblymember Harris on Assem. Bill No. 2931, Apr. 18, 1980 [letter of opposition]; Marjorie C. Swartz, Deputy State Public Defender, letter to Assemblymember Harris on Assem. Bill No. 2931, Apr. 18, 1980 [letter of support]; Michael L. Pinkerton, Cal. Attorneys for Criminal Justice, letters to Assemblymember Harris on Assem. Bill No. 2931, April 16 and 10, 1980 [letters of support]; Steve White, *op. cit.*, Apr. 10, 1980 [letter of opposition]; Judge Brian D. Crahan, Los Angeles County Municipal Court Judges' Association, letter to Assemblymember Harris on Assem. Bill No. 2931, Apr. 11, 1980 [letter of opposition].) The entirety of the foregoing documents

14

demonstrate an absence of any legislative intention to permit individual counts to be dismissed as distinguished from the entirety of the misdemeanor complaint.

D. Evidence Cited By Defendant In Support of His Argument that Section 991 Provides a Judge or Magistrate with the Authority to Dismiss Individual Counts

By contrast, defendant contends there are legislative documents which show the Legislature expected section 991 permitted a trial court to dismiss individual counts. A number of documents contain the following language: "Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out." (Assem. Com. on Criminal Justice (Assem. Bill No. 2391) Apr. 21, 1980, p. 2; Assem. Com. on Criminal Justice (Assem. Bill No. 2391) Apr. 28, 1980, p. 2.) Similar language appears in a Senate reports: "Proponents argue that this bill would establish a procedure for the expeditious dismissal of unsupported or frivolous charges. They also state that, under the present system, people accused of misdemeanors are in custody for 30 days before groundless charges can be ascertained." (Sen. third reading report on Assem. Bill No. 2931 as amended July 9, 1980, p. 1; Sen. Democratic Caucus, Rep. on Assem. Bill No. 2931 as amended July 9, 1980; Sen. Committee on Judiciary, *op. cit.*, pp. 4-5; Sen. Com. on Judiciary report on Assem. Bill No. 2931 as amended May 7, 1980, pp. 4-5.)

In addition, there are documents using the terminology "preliminary hearing" to describe the section 991 proceeding. Defendant utilizes these references to a preliminary hearing to support his argument that individual counts may be dismissed as would be the case in a felony prosecution. The first references to a preliminary hearing are in the two Assembly criminal justice committee reports prepared for April 21 and 28, 1980 hearings provides as background analysis: "Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether

15

there is reasonable cause to believe a felony has been committed by the defendant.  The purpose of the preliminary hearing is to weed out groundless or unsupported charges (Witkin, Ca. Crim. Pro. p. 128).  Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial."  (JN 22, 24 )~ (Assem. Com. on Criminal Justice, *op. cit.*, Apr. 28, 1980, p. 1; Assem. Com. on Criminal Justice, *op. cit.*, Apr. 21, 1980, p. 1.)  The exact same language appears in the report prepared for the final Senate vote.  (Sen. third reading report, *op. cit.*, p. 2.)  As can be noted, the two Assembly reports confuse the felony procedure with misdemeanor case processing.  This misunderstanding is probably based upon the previously discussed error in the Legislative Counsel's Digest.  However, the two Assembly reports describe the proposed section 991 hearing as a preliminary hearing.  The same is true of the Senate third reading report.

Similarly, the Los Angeles County Municipal Court Judges Association argued that Assembly Bill No. 2931 created a time-consuming preliminary hearing for misdemeanors and thereby opposed the proposed legislation.  (Letters of Judge Brian Crahan, *op. cit.*, Apr. 11 and June 13, 1980.)  The Senate judiciary committee report identifies the opposition from the municipal court judges and comments:  "The Los Angeles County Judges' Association states that preliminary hearings for misdemeanors are unnecessary given existing procedures for challenging probable cause.  [¶]  The Association is also concerned that these hearings would only add to court congestion.  [¶] SINCE A DETERMINATION OF PROBABLE CAUSE IS MANDATED BY BOTH THE U.S. AND CALIFORNIA SUPREME COURTS, WHAT IS THE BASIS FOR OPPOSITION BY LOS ANGELES MUNICIPAL COURT JUDGES?"  (Sen. Com. on Judiciary report, *op. cit*., p. 5.)  One additional report indirectly adverts to the municipal court judges' congestion concerns.  (Sen. Democratic Caucus, *op. cit.*, p. 1.)

## E. Analysis

The weight of the evidence indicates the Legislature did not consider whether nor intend to allow for the dismissal of individual counts during the misdemeanor probable cause hearing. First, Assembly Bill No. 2931's purpose was to codify the *Gerstein* and *Walters* requirement that a probable cause determination be made before a misdemeanor defendant remains in custody awaiting trial. In allowing Assembly Bill No. 2931 to become law without his signature, Governor Brown expressly so stated. The Senate Judiciary Committee report expressly states the purpose of Assembly Bill No. 2931 is to create a procedure to eliminate "groundless misdemeanor complaints" and "codify In re Walters." (Sen. Com. on Judiciary report, *op. cit.*, p. 2.)

Further, the Tucker memorandum which contains the floor statement for Assemblymember Harris states that Assembly Bill No. 2931 is merely a codification of *Walters*. (Tucker memorandum, pp. 1-2.) And, as explained by the Senate Judiciary Committee staff, Assembly Bill No. 2931 structures the probable cause hearing so as to comply with the *Walters* decision and the Fourth Amendment. (*In re Walters*, *supra*, 15 Cal.3d at pp. 750-753; Sen. Com. on Judiciary report, *op. cit.*, pp. 1-4.) The only difference between the Fourth Amendment requirements described in *Walters* and Assembly Bill No. 2931 is the requirement a complaint be dismissed as distinguished from requiring the accused's release. This was the precise issue identified by Mr. White of the district attorneys association, Mr. Kline and Governor Brown. Nothing in *Walters* requires dismissal of a complaint; if probable cause is not present, the accused must be released. More to the point, nothing in *Walters* requires dismissal of individual counts. But, both Assembly Bill No. 2931 and *Walters* required discharge of a misdemeanor accused if probable cause is not present.

Second, the committee reports and other documents only refer to dismissal of the complaint, not individual counts. On *12 occasions*, legislative history documents refer to dismissal of a complaint. On *no occasion* does any report, analysis, letter or version of

17

Assembly Bill No. 2931 refer to dismissal of an individual count. Thus, defendant's nonspecific references to the dismissal of frivolous charges language do not support the theory that dismissal of individual counts is appropriate. Defendant seeks to utilize committee reports to support a position which never is articulated in the legislative process—that individual counts may be dismissed. The only disposition in terms of dismissal mentioned in any legislative documents (including versions of Assembly Bill No. 2931) is the complaint's dismissal. (§ 991, subd. (d) ["dismiss the complaint."].)

Third, defendant's theory that the section 991 misdemeanor probable cause hearing can be analogized to preliminary hearing where individual counts can be dismissed is without merit. The preliminary hearing, an alternative to the grand jury indictment processes, has its basis in the English common law. The United Supreme Court has explained the use of an information as an alternative to indictment was "an ancient proceeding at" common law. (*Hurtado v. California* (1884) 110 U.S. 516, 525-526, 538; see *Jones v. Robbins* (Mass. 1857) 74 Mass. 329, 346; Jerold H. Israel, Free-Standing Due Process and Criminal Procedure: The Supreme Court's Search for Interpretive Guidelines (Spring 2001) 45 St. Louis U. L.J. 303, 318.) The preliminary hearing process was first adopted in 1850 as part of the Act to regulate the Proceedings in Criminal Cases. (Stats. 1850, ch. 119, §§ 147-163, pp. 286-287.) Since the adoption of the Constitution of 1879, unless a felony is charged with an indictment, a preliminary hearing is the constitutionally mandatory procedure before a felony information may be filed. (Cal. Const., art. I, § 14; *Kalloch v. Superior Court* (1880) 56 Cal. 229, 233-234.) None of the committee reports or other memoranda compare the felony and misdemeanor charging processes other than to reference the fact there is no preliminary hearing in a case such as ours.

Here, the Legislature used language consistent only with dismissal of the entire complaint. In addition, the committee reports and other documents indicate the purpose of Assembly Bill No. 2931 was to comply with the Fourth Amendment requirements imposed by *Gerstein* and *Walters*. No such legislative history exists in the case of felony preliminary hearings which, as noted, finds its basis in: English common law; the first

18

criminal enactments after statehood; and in the California Constitution. Also, a felony preliminary hearing applies to both incarcerated and out of custody defendants. Section 991 applies only to *in custody* defendants. And for good reason, Assembly Bill No. 2931 was adopted in response to the Fourth Amendment custody concerns identified in *Gerstein* and *Walters*. And, felony preliminary hearings and section 991 involve the use of entirely different evidence. The detention decision required by section 991 only involves the use of reports, not live sworn testimony as in the case of a felony preliminary hearing. More to the point, no committee report states that felony preliminary hearing procedures apply to the misdemeanor probable cause determination.

One additional comment is in order concerning defendant's preliminary hearing analogy intention. At oral argument, defendant argued section 991 is a mere four sections away from section 995. Thus, defendant reasoned the Legislature intended a detained misdemeanant accused may secure dismissal of an individual count pursuant to section 991. Sections 991 and 995 are codified in title 6 of the Penal Code which is entitled, "Pleadings And Proceedings Before Trial." Chapter 1 of title 6, in which section 991 appears, is entitled, "Of The Arraignment Of The Defendant." Section 995 is not in chapter 1 of title 6. And for good reason, section 995 is not an arraignment related-provision. Rather, section 995 appears in chapter 2 of title 6 which is entitled, "Setting Aside The Indictment Or Information." Accordingly, sections 991 and 995 appear in separate chapters directed at different stages of the criminal proceedings. The two statutes serve different purposes and are derived from disparate times in our state's history. With respect, defendant's legislative intent propinquity proposition is unpersuasive.

Finally, in engaging in construction of all statutes, ambiguous or otherwise, the most important consideration is the language chosen by the Legislature. (*In re Ethan C., supra,* 54 Cal.4th at p. 627; *Pineda v. Williams-Sonoma Stores, Inc., supra*, 51 Cal.4th at pp. 529-530.) As noted, section 991 only refers to dismissal of the entire complaint. Thus, if there is sufficient ambiguity to warrant judicial construction, the words referencing dismissal of the complaint selected by the Legislature in section 991

19

conclusively resolve the issue.  (§ 991, subd. (d) ["If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant."].)

In a similar vein, section 991, subdivision (d) makes little sense if defendant's statutory construction is adopted.  Section 991, subdivision (d) states in part:  "If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial.  [¶]  If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant."  If probable cause is not present, the complaint must be dismissed and the defendant discharged.  No other reading of section 991, subdivision (d) is plausible.  Defendant's theory, which allows for dismissal of not all the counts but no discharge of an accused, cannot be supported by the statutory language.  Defendant does not argue that he would be entitled to discharge because two of the three counts were dismissed.  Thus, the "discharge the defendant" language cannot apply to defendant.  Yet that is the precise language ("discharge the defendant") utilized by the Legislature.  Section 991, subdivision (d) does not speak to what occurs when less than all the counts are unsupported by probable cause and dismissed.  And the reason for this is that section 991 is designed to enforce the Fourth Amendment custody protections available to misdemeanants articulated in *Gerstein* and *Walters*.  The statutory language, the best indication of legislative intent, does not support defendants' theory that section 991 allows dismissal of less than all of the counts.  For these collective reasons, I reach the same conclusions as did the appellate division.


TURNER, P. J.


20